May Term,
1861.

NOBLE and Another *v.* THE CITY OF INDIANAPOLIS.

NOBLE
*v.*
THE CITY OF
INDIAN-
APOLIS.

*A.* died, leaving certain real estate in the *City of Indianapolis*, which de-scended to his heirs, and which was afterward assessed by the city to "*A.'s* heirs." In 1855, the real estate was partitioned by a decree of Court among the several heirs, and some of it had been sold to third persons. In 1858, the city treasurer advertised the several pieces of real estate, on which the taxes had been assessed, for sale, for the taxes then delinquent.

*Held*, that the assessment was not fatally defective.

*Held*, also, that it was not the duty of the assessor to examine the records of the Court, to ascertain if partition had been made; and prior to the act of 1859, (Acts 1859, p. 160,) it was not the duty of the clerk of the Court to communicate the fact of partition to the auditor, or any one else.

*Held*, also, that taxes due the city were saved by § 80 of the act of 1857, (Acts 1857, p. 70.)

*Wednesday,*
*August 14.*

APPEAL from the *Marion* Circuit Court.

PERKINS, J. — *Noah Noble* died, leaving real estate which descended to his heirs. After his death, the real estate was assessed by the city of *Indianapolis*, within whose jurisdiction it lay, to "*Noah Noble's* heirs." The taxes had accumulated to between $1,300 and $1,400, when, in 1858, the city treasurer advertised for sale the several pieces of property on which the taxes, making the aggregate sum above stated, were assessed, in order to collect said taxes. In 1855, the said several pieces of property had been partitioned, by the decree of the proper Court, among the heirs, and some of it had been sold to third persons, but the deeds had not been recorded.

This suit was instituted by *Noble's* heirs to enjoin the sale for the taxes, on the ground, alone, that the assessment to "*Noble's* heirs" was void. A perpetual injunction was denied, and an appeal was prosecuted to this Court.

Counsel for the city argues:

"*Firstly.* The statute has vested another tribunal with exclusive jurisdiction of the subject matter of the action.

"The language of the act is, that 'the Common Council, together with the assessor, shall constitute the Board of Equal-ization of such city, and shall, within one month after the assessment roll has been returned, at a stated meeting thereof,

of which at least two months notice shall be given, hear and decide all complaints in relation thereto.' The clause, 'shall hear and decide all complaints,' definitely determines the duties of the board. It leaves no room for conjecture. The power to hear and decide, is eminently a judicial one. This power is exercised by, and properly pertains to, judicial tribunals; and whenever an officer, ministerial or executive, has matters submitted to him to hear and decide, he is, while engaged in the performance of this duty, exercising judicial functions. Tribunals whose duties are much more analogous to those of legislative bodies and ministerial officers, have been always regarded as judicial. Thus the commissioners of sewers, established by the *British* Parliament (21 Henry VIII, ch. 5), of highways, of paving and board of supervisors, have always been held to be judicial tribunals. Bacon's Abridg. Title *Certiorari;* Salk. 145; 1 Raymond, 469; 1 Levi, 288; 1 Mod. 44; *State* v. *Newark,* 1 Dutcher, (N. J.) 405. So also the acts of common councils of cities, in laying out streets and alleys, constructing sewers, improving streets, and building bridges, have been held to be judicial. *Rochester White Lead Co.* v. *City of Rochester,* 3 Comstock, 467; *State* v. *Newark,* 1 Dutcher, (N. J.) 405; *Parks* v. *Boston,* 8 Pick. 218; *Charles* v. *City of Hoboken,* 3 Dutcher, (N. J.) 203; *People* v. *City of Rochester,* 21 Barbour, 656. This reference to our governmental structure, this brief comment upon the language of the act establishing this board, and this hasty review of the authorities, shows conclusively that the duties of the board are judicial."

"*Secondly.* The Circuit Court could not entertain jurisdiction, if at all, until after the matter had been submitted to the Board of Equalization. Their duties are to hear and determine complaints in relation to the assessment roll, and as this complaint relates to that roll, it is their province to hear and decide it. Of the meeting of this tribunal, the tax-payers have had legal notice. The charter of the city is a public act, and it is provided that the Board of Equalization 'shall, within one month after the assessment roll has been returned, at a stated meeting thereof, of which two weeks' notice shall be given, hear and determine all complaints.' It is a rule of law,

May Term, 1861.

NOBLE
v.
THE CITY
OF INDIANAPOLIS.

May Term,
1861.

NOBLE
v.
THE CITY
OF INDIANAP-
OLIS.

universally recognized, 'that every reasonable presumption is to be made in favor of the acts of municipal authorities;' and acting upon this rule, the Court must presume, in the absence of *countervailing* circumstances, that this notice was (as in fact it was) properly given. In *Hambleton* v. *Dempsey et al.*, 20 Ohio, 168, it was said, that "This is notice to every citizen who has property, real or personal, returned for taxation." This gives both the requisites which a Court must possess, before a plenary judgment can be rendered. Jurisdiction of the subject matter, and of the person, is thus acquired. If the tax-payers are aggrieved by the assessor's return, it is their imperative duty to *first* complain before the tribunal established for the express purpose of entertaining such complaints; if they neglect this, they are estopped from complaining elsewhere. Of the powers of this tribunal they are bound to be cognizant, *ignorantia juris non excusat;* and of the time of meeting, they have had legal notice. They have not addressed their complaint to that tribunal, and they can not to this. In *Merrill* v. *Gorham*, 6 Cal. 42, *Murray*, C. J., delivering the opinion of the Court, said: 'The ninth section of the act of 1851, enjoins upon the Board of Supervisors the duty of making the assessment conform to a particular basis, and also establishes a Board of Equalization; it results, that the party, if he were aggrieved, had his remedy by applying to the board, *but not having done so, he is concluded.*' To the same effect, are the decisions in *Colonial Life As. Co.* v. *Board of Supervisors of New York*, 24 Barbour, 167; *Mutual Ins. Co.* v. *Supervisors of Erie Co.*, 4 Comstock, 443."

" *Thirdly.* The Circuit Courts have no jurisdiction over the legislative acts of a municipal corporation.

"This point needs no elaboration. To make the proper corrections, would require a legislative act; and as the defendants are not entitled to a temporary injunction, (*Dongan* v. *Hagan*, 1 Bosworth, 465; 16 How. Pr. R., 62; 8 Abbott Pr. Rep., 515; 3 Abbott Pr. R., 182; Vorhies' Code, 261; Whitt. Pr. 173) unless entitled to final relief, it follows that to grant the relief demanded would be to prohibit any legislation upon this subject, and this the Circuit Court can not do. *People* v. *Mayor of New York*, 253; *People* v. *Flagg*,

7 Abbott Pr., 172, see opinion, p. 179; *Meth. Church* v. *Ball*, 6 Gill, 391; *Baldwin* v. *Bangor*, 36 Vermont, 519; *Williams* v. *Central Railway Co.*, 18 Barbour, 222; *People* v. *Supervisors of Alleghany*, 15 Wendell, 211; 5 Cowen, 549; 4 Myl. & Cr. 249; 9 Simons, 66; *Weaver* v. *Devendorf*, 3 Denio, 119; *Davis et al.* v. *Mayor of New York*, 1 Duer, 451.

Counsel further contends, that injunction was not the proper remedy, if the party was entitled to any. "The weight of judicial opinion is strongly against interference by injunction. *Mayor, &c. of Brooklyn* v. *Messerole*, 26 Wendell, 132; *Bouton* v. *City of Brooklyn*, 7 How. Pr. R. 198; *Moers* v. *Smedley*, 6 Johns. Ch. R. 28; *Bank of Utica* v. *City of Utica*, 4 Paige, 399; *Wiggin* v. *Mayor of New York*, 9 Paige, 16; *Livingston* v. *Hollenbeck*, 4 Barbour, 10; *Van Renssalaer* v. *Kidd*, id. 17; *Thatcher* v. *Dusenbury*, 9 How. Pr. Rep. 32; *New York Life Ins. Co.* v. *Board of Supervisors*, N. Y. Sup. Ct.; *Wilson* v. *Mayor of New York*, 1 Abbott Pr. Rep. 32; *Chemical Bank* v. *Mayor, &c.*, id. 79; *Van Doren* v. *Mayor, &c.*, 9 Paige, 388; *Cure* v. *Crawford*, 1 Code R. 18; *Ex parte Cox*, 3 Atk. 639; *The King* v. *King et al.*, 2 Term R. 234. In the case of *Moers* v. *Smedley*, *supra*, Chancellor *Kent* said: 'In the whole history of the *English* Court of Chancery, there is no instance of the assertion of such jurisdiction as is now contended for.'"

Counsel argues that the cases of *Osborn* v. *The Bank*, 9 Wheat. 868; and *Woolsey* v. *Dodge et al.*, 6 McLean, 142, are not in point, because they involved the existence of a corporate franchise; and that in the cases of *Black* and *Jenners*, in 5th and 10th *Indiana*, the point was not raised.

"But if it be held that the decisions in *Greencastle* v. *Black*, and *Jenners* v. *Lafayette*, maintain the doctrine that Courts will interfere by injunction, to prevent the collection of an illegal tax, it does not establish the correctness of appellants' position. Those cases are widely different from the present. There, the tax was levied in pursuance of a *void act;* here, the *law is valid*, and the ground of complaint is a mere irregularity in the proceedings of the assessor."

It is further claimed, that "the assessment of the taxes to the heirs of *Noah Noble* is not, of itself, sufficient cause for

an injunction. It seems to me that the position of the appellants, that the assessor was bound to inspect the records of the Court of Common Pleas, to ascertain what changes had been made in the ownership of property, is plainly an untenable one. The property had been, as we fairly infer from the complaint, assessed to the heirs of *Noah Noble*, and all prior taxes were paid. If the change in the ownership of the property had been made upon the records of the recorder, or upon the books of the county auditor, there might, perhaps, have been some plausibility in their reasoning, although even then their present position could not be sustained. But it is needless to elaborate this point. The logic of the Court in *Ronkendorff* v. *Taylor*, 4 Peters, 349, where an assessment to '*Henry Toland's* heirs' was held sufficient, is invincible; and the same remark, with equal force, applies to the case of *Wheeler* v. *Anthony*, 10 Wend. 346, where it was held that the designation of the property owners as 'the widow and heirs of *Zopher S. Wheeler*, deceased,' was sufficient. In *The State* v. *Collector of Jersey City*, 4 Zabriskie, after careful consideration, the Court held that an assessment to the 'Estate of *J. B. Coles*' was good. *Pond* v. *Grafton*, 21 Pick. 75; *William* v. *School District*, 20 *id*. 418."

"The remark of *Murray*, C. J., in *Robinson* v. *Gaar*, 6 Cal. 275, that 'The plaintiffs are the best judges of their own title, and must determine, at their own risk, whether it is worth paying taxes on, or not; that they can not assert the ownership of the land, and deny the legal consequences of such right,' applies with peculiar force to this case. The appellants are either the owners of the land, or they are not. If they are the owners, they must pay taxes, and can not complain; and if they are not the owners, they have no interest in the matter, and can not complain. In either case, therefore, they have no right to complain. In *Richardson* v. *The State*, 5 Blackf. 51, it was not the name, but the description of the land, that was too vague."

This last position, assumed by the counsel for the city, to wit, that the assessment is not fatally defective, we think correct, and decisive of the case. Hence, we express no opinion on the previous points stated.

May Term,
1861.

NOBLE
v.
THE CITY
OF INDIANAP-
OLIS.

It is enacted by statute, (1 R. S., § 174, p. 143,) that "The sale of land for taxes shall not be invalid, on account of such lands having been listed, or charged on the duplicate, in any other name than that of the rightful owner." To the same effect, R. S. 1843, § 119, p. 228.

It is not averred in the complaint, that the owners had any personal property, or that it was not searched for; hence, no question arises as to the effect such facts, had they been brought into the case, might have produced.

We do not think it was the duty of the assessor to examine the records of the Court, to ascertain if partition had been made. And prior to 1859, it was not the duty of the clerk to communicate the fact of partition to the auditor, or any one else; but by an act of 1859, (Acts 1859, p. 160,) it is made the duty of the county clerk to furnish to the county auditor a transcript of judgments of partition; and of the latter to note the changes of title made thereby, and then to hand said transcript to the recorder for record, as in cases of transfer of title by deed.

Taxes due the city were saved by the act of 1857, amending the Charter. Section 80, is as follows: "No rights acquired, or liabilities incurred, in favor of or against any city, and no suit or prosecution of any kind, pending, shall be affected by the surrender thereof, as provided in the preceding section, but the same shall remain in progress, the same as if no change had been made." This is plain and explicit, broad and comprehensive. Rights previously acquired are to be enjoyed, "*the same as if no change had been made.*" Taxes are liens upon property.

It is admitted that to render a sale for taxes valid, all the taxes, to collect which the sale is made, must be legal (*McQuilkin* v. *Doe*, 8 Blackf. 581); but nothing appears showing that those in this case were not so.

The point as to the day on which the sale was advertised to take place, is not now material. The sale was arrested by a temporary restraining order, and has not yet taken place, and can not, but upon new notice according to existing law.

*Per Curiam.*—The judgment is affirmed, with costs.

*John L. Ketcham* and *N. B. Taylor*, for the appellants.

*B. K. Elliott*, for the appellee.