PATTERSON ET AL. *v.* GARY LAND COMPANY ET AL.

[No. 14,368  Filed February 2, 1934.  Rehearing denied May 18, 1934.  Transfer denied February 26, 1934.  Petition to reconsider dismissed March 28, 1936.]

*Darrow, Rowley & Shields, Harry Long, John Lyddick,*

*Arthur L. Roule, E. G. Ballard, William R. Forney, Pickens, Davidson, Gause, Gilliom & Pickens,* and *M. B. Hottel,* for appellant.

*Pattee & McMahon, Knapp, Beye, Allen, Cochran & Cushing,* and *Crumpacker & Friedrich,* for appellees.

WOOD, C. J.—The appellants have filed a petition for rehearing in this cause. In our opinion of June 29, 1933, we held that the special praecipe to the clerk of the Porter Circuit Court was not sufficient to authorize that official to include in the transcript and certify as a part thereof on appeal to this court, the seconded amended supplemental cross-complaint of the appellee, Gary Land Company, and because of its absence from the record, could not consider this appeal on its merits and affirmed the judgment of the lower court. We have again reviewed the authorities cited to this point by both the appellant and appellee, as well as other authorities, including the case of *Smith* v. *Switzer* (1933), 205 Ind. 404, 186 N. E. 764, just recently decided by our Supreme Court, and conclude that the pleading in question is properly in the record. The petition for rehearing is therefore granted.

The appellee Gary Land Company contends that the appellants did not save exceptions to the conclusions of law at the time they were filed, and that therefore no question is presented for our consideration. This contention is without merit. The record shows that upon January 7, 1931, the court signed and filed its conclusions of law, after which on the same day, some of the cross-defendants to the cross-complaint of appellee Gary Land Company dismissed certain pleadings theretofore filed by them. Then, upon the same day, and imme-

diately following the entry of dismissal of these pleadings, is the following entry: "The court having had this cause under advisement, now signs and files its conclusions of law from one to eight, both inclusive, herein as follows." Then follow the conclusions of law. Immediately thereafter and on the same day, the record shows that the appellants William P. Patterson, Clarence V. Shields, Earl Rowley, Lemuel Darrow and Everett G. Ballard excepted separately and severally to certain designated conclusions of law. This was sufficient to comply with the requirements of our code.

Appellee Gary Land Company next contends that this cause should be affirmed because of appellant's failure to comply with the rules of this court in the preparation of their brief. This contention is likewise without merit. Appellant's briefs are prepared in compliance with the rules of this court.

This action was originally commenced June 6, 1920, by the appellee Bertha A. Manlove as a suit to partition real estate. One Frank B. Pattee, to whose interest the appellee Gary Land Company became successor, by conveyance on August 31, 1929, was made one of the parties defendant to the action, and on April 29, 1921, filed a cross-complaint in three paragraphs. Bertha A. Manlove dismissed her complaint for partition April 21, 1930.

The cause was tried upon issues tendered by the amended cross-complaint, together with supplemental cross-complaints filed by the appellee Gary Land Company, answers filed thereto by the appellants and the co-appellees of the Gary Land Company, and a reply by the Gary Land Company, to the paragraphs of answer alleging affirmative matter. Also, upon issues tendered by the cross-complaint of the appellant William P. Patterson and answer in general denial filed thereto by the appellee Gary Land Company.

These pleadings are long and involved. No question as

to their sufficiency is presented by the record. Inasmuch as the cause was tried to the court without a jury, who upon request of the appellee Gary Land Company made and filed a special finding of facts, and stated conclusions of law thereon, we do not think it necessary to set out the pleadings or their substance. It is sufficient to state that the appellee, Gary Land Company, sought to quiet its title to certain real estate, basing its right to maintain such action upon several tax deeds issued to its immediate grantor, Frank B. Pattee, and, in the event such deeds should not be sufficient to vest title to the real estate in it, that a lien be declared thereon in its favor for the taxes thus paid, including penalties, interest and costs as provided by law. This complaint was answered by general denial and three affirmative paragraphs of answer. The affirmative paragraphs alleged facts upon the theory of estoppel, because of an agreement existing between the cross-defendants and Frank B. Pattee; invalidity of the tax deeds to convey title to or a lien upon the real estate, because of irregularities attending the various tax sales and issuing of the tax deeds; and the four-year statute of limitation because of failure to issue the tax deeds within four years from date of the tax sale. To these affirmative paragraphs of answer the Gary Land Company filed a reply in general denial and one affirmative paragraph of reply. The affirmative paragraph rested upon the theory of laches on behalf of the cross-defendants. The appellant William P. Patterson by his cross-complaint sought to quiet his title to a portion of the tract of real estate involved, as against the appellee Gary Land Company, basing his right upon a title alleged to be derived from the owner of the entire tract of real estate. This pleading was answered by a general denial.

There was no motion for a new trial filed. The evidence is not in the record.

The special finding of facts, briefly summarized, dis-

close: that previous to 1908, Winchester W. Hall and Rosa M. B. Hitt claimed to be the record owners, and were named as owners on the assessor's book, tax duplicates, and delinquent land and lot records of Lake County, Indiana, of 88.76 acres of land, described as all that part of fractional section thirty-one, township thirty-seven north, range seven west, lying north and west of lot one in said section, being all of the land lying south of Lake Michigan, north and west of the Grand Calumet River and north of what is known as the Indian Boundary Line; its location can perhaps be better understood by explaining that the land in question is a rather narrow strip, located upon the south shore of Lake Michigan, extending approximately one mile in length from the Grand Calumet River on the east to the east boundary line of the property of the United States Steel Corporation on the west, and varying in width north and south from Lake Michigan, 650 to 1200 feet, to said Indian boundary line on the south; the surface of the land is and always has been composed of sand, inclined to drift and shift with the wind; very little top soil or vegetation covers the surface; it has never produced crops of any kind nor has it been farmed; a few small poplar trees and brush appear over the tract; this condition has prevailed as long as men forty or fifty years of age can remember; a beach from fifty to one hundred feet in width, bordering the lake, extends along the entire north side; back of this beach are barren sand hills; there are no fences on the land and none have been erected in the last fifty years, except a fence on the east line, erected by the Gary Park Board; a township road was constructed across the land from north to south in 1896; sidewalks were constructed on each side of this highway a portion of the distance across the land, but by whom does not appear; there are no other substantial improvements; the city of Gary was founded in 1906; since its organization it has had a

marked and continuous growth, until at the time of the trial of this cause its population was 100,000; in 1920 the east boundary line of the city of Gary was extended so this land is now located within the city limits; in 1912 the value of the land did not exceed $700 per acre, the value at the time of the trial of this cause was placed at from $3,500 to $5,000 per acre; its value has been highly speculative because of the nature of the land, its location, and the fact that its title and possession have been involved in litigation for many years; in 1908, Drusilla Carr, claiming to be its owner by reason of adverse possession under color of title, brought suit against Winchester W. Hall and Rosa M. B. Hitt to quiet her title thereto; this litigation was waged continuously between the parties in one form or another, until April 9, 1929, when our Supreme Court rendered a decision finally quieting title in the land in Drusilla Carr; neither the appellee Gary Land Company nor Frank B. Pattee, its grantor, were ever parties in any capacity to any of this litigation; prior to August 17, 1916, Drusilla Carr conveyed undivided interests in the land to the appellee Daniel E. Kelly, Henry Warrum and Bertha A. Manlove, also, to the appellant Everett G. Ballard and one Albert C. Carver, who, on January 27, 1928, conveyed his interest in the land to the appellant William P. Patterson; previous to 1924 Drusilla Carr conveyed undivided portions of the land to some of the cross-defendants to the cross-complaint of appellee Gary Land Company but to whom does not appear; the special findings do not show that any of these deeds were ever placed on record; on August 6, 1926, Drusilla Carr conveyed an undivided interest in a portion of the land to the appellants Lemuel Darrow, Earl Rowley and Clarence V. Shields; this deed was placed on record; Drusilla Carr and the parties claiming under her had been in possession of the land since the institu-

tion of the suit by her in 1908, to quiet title thereto; neither the appellee, Gary Land Company, nor its grantor, Frank B. Pattee, have ever been in possession of any of the land; in November, 1924, Drusilla Carr, Henry Warrum, and Everett G. Ballard, as plaintiffs, instituted a suit in partition against Bertha A. Manlove, Daniel E. Kelly and Albert C. Carver as defendants; partition of the land was made and separately specifically described parcels of the entire tract were deeded to each of the parties to the partition suit by a commissioner; these deeds were recorded in the recorder's office; in 1910 the entire tract of land was assessed for taxes, an undivided half interest was assessed in the name of Hall and an undivided half interest in the name of Hitt; the same land was assessed in the same manner in the year 1911; Hitt's share of the taxes for these years went delinquent; at the tax sale on February 12, 1912, Frank B. Pattee bid in Hitt's undivided half interest in seven acres out of the 88.76 acre tract for Hitt's delinquent taxes on her undivided half interest in the whole tract of land; the 1911 taxes on Hall's undivided half of the entire tract of land went delinquent; in the assessor's book for the year 1912, the entire tract of land appeared in the name of Hall and Hitt and there was nothing to indicate that they owned undivided interests therein; the same facts appeared in the tax duplicate for that year, and the tax for the year 1912, payable in 1913, was entered upon the tax duplicate against the entire tract of 88.76 acres and not against undivided interests therein; at the tax sale on February 10, 1913, Frank B. Pattee bid in Hall's undivided half interest in twenty acres, for his delinquent taxes on the entire tract of 88.76 acres; at the tax sale on February 9, 1914, Frank B. Pattee bid in Hitt's undivided half interest in forty acres out of the northwest corner of the 88.76 acre tract, except

seven acres out of the northwest corner of the forty
acre tract, for taxes which Hitt had permitted to go
delinquent and which taxes were assessed against the
whole tract of 88.76 acres; at the tax sale on February
8, 1915, Frank B. Pattee bid in Hall's undivided half
interest in forty acres out of the 88.76 acres for taxes
permitted to go delinquent, which were assessed in the
year 1913 against the entire tract of 88.76 acres, and for
the year 1914 against 81.76 acres of the entire tract of
land, and at the same sale Frank B. Pattee bid in Hall's
undivided half of seven acres out of the northwest
corner of the 88.76 acre tract for taxes permitted to go
delinquent against said seven acre tract; Hitt permitted
her taxes for the year 1914, assessed against her un-
divided one-half of 81.76 acres of the tract, and taxes
for the year 1915, assessed against her undivided half
of 61.76 acres in the entire tract, to go delinquent; at
the tax sale on February 14, 1916, Frank B. Pattee bid
in 61.76 acres out of the entire tract of 88.76 acres for
Hitt's delinquent taxes; Hall permitted his half of the
taxes assessed against a tract of 61.76 acres; also, a
tract of seven acres, all contained within the tract of
88.76 acres, to go delinquent; Hitt permitted her half
of the taxes assessed against a tract of twenty acres
contained within the tract of 88.76 acres to go delin-
quent; at the tax sale held on February 12, 1917, Frank
B. Pattee bid in Hall's undivided half interest in 21.76
acres, also, seven acres, also, forty acres, for the taxes
of 1915 and 1916 which had gone delinquent; at the
same sale Frank B. Pattee bid in Hitt's undivided half
interest in twenty acres for the taxes of 1915 and 1916
which had gone delinquent; within a period of two and
a half years after each of the above sales was held,
Frank B. Pattee surrendered the certificate of sale is-
sued to him at the time of each respective tax sale, to
the county auditor, who executed and delivered a tax

deed purporting to convey to Patteee the tract or tracts of land therein described, which deeds were all duly executed and entered of record; in no instance did the description of the land set out in the deed correspond with the description in the certificate of sale, but each tract of land described in each of the tax deeds was located within or described the entire tract of 88.76 acres; neither Frank B. Pattee or the Gary Land Company caused a deed to be executed and placed on record, after any of these various tax sales describing the lands as described in the respective tax sale certificates; Frank B. Pattee paid $1.25 for making and executing each tax deed above referred to and such other expense as was incident thereto; the county auditor did not comply with the provisions of Secs. 10354-10355, Burns 1914, Acts 1891, p. 199, in any of the tax sales above referred to; six different tax deeds were issued to Frank B. Pattee by the county auditor, purporting to convey parts of the 88.76 acres of land to him, they were all in the form prescribed by statute; Frank B. Pattee paid the taxes upon the tracts of land covered by the respective tax deeds, which in the aggregate included the entire tract of 88.76 acres here in controversy, each and every year after receiving said deeds as above related, until the fall of 1921, after which time, the Gary Land Company paid the taxes to and including October 28, 1929, when the last payment was made, so far as disclosed by the record; tax receipts were issued for the payment of these taxes, showing the municipal corporations, where the land was situated, and notwithstanding certain technical errors and defects contained in the descriptions in certain of said receipts, the payment of taxes was made in each instance upon the whole or portions of the land in controversy; during the entire period of fifty-four years, from 1876 to the date of the trial of this cause, neither Drusilla Carr, nor any of the

other cross-defendants to the cross-complaint of the appellee Gary Land Company ever redeemed or paid any of the taxes upon the 88.76 acres of land, except in February, 1917, Daniel E. Kelly and Bertha A. Manlove redeemed an undivided one-sixth and an undivided one-twelfth interest respectively, in the land sold for delinquent taxes in February, 1915; taxes began to go delinquent in the year 1910 and subsequent thereto; after that time, all the taxes assessed and levied against the land were paid and discharged by Frank B. Pattee and the Gary Land Company, except small amounts paid by Kelly and Manlove on one occasion for redemption as above stated; there was no legal impediment to prevent Drusilla Carr nor the other cross-defendants from paying the taxes; all the cross-defendants knew at all times that the taxes were going delinquent; that said tract of land was being sold at tax sales and tax certificates and deeds were being issued thereon; that the taxes on the land were being paid by Frank B. Pattee or the Gary Land Company; Frank B. Pattee did not at any time agree with any of the cross-defendants to the cross-complaint of the Gary Land Company, nor any one purporting to represent them, that he would pay the taxes while litigation concerning the title to the land was in progress between Drusilla Carr and Hall and Hitt, and that when such litigation was terminated, he would convey the lands to her and the other cross-defendants upon the payment to him of the amount which might be due him as the holder of the statutory liens; no one of the cross-defendants at any time tendered any money for redemption of the land or any portion thereof from said tax sales or otherwise; neither did they or any of them at any time compute the amount they claimed to be due Frank B. Pattee, as the holder of tax liens upon the land and offer to pay that amount of money or any amount of money to him;

nor did they ever pay any money into court in this action; the court also found the various sums that Frank B. Pattee and the Gary Land Company had paid as taxes at different times with the penalties attached thereto; the entire tract of land in controversy appeared upon the tax duplicates in the names of Hall and Hitt, some of the time designating them as owning an undivided half interest therein, and on other occasions not indicating the interest of either of them in the land, except, that after Frank B. Pattee had bid in some portions of said entire tract of land at tax sales and had received deeds from the auditor purporting to convey such portions to him, they appeared in his name upon the tax duplicates and he was assessed for and paid the taxes upon such tracts of land; the special finding of facts does not show that Drusilla Carr nor any of the other cross-defendants to the cross-complaint of appellee Gary Land Company ever, at any time, had any portion of the land in controversy transferred to their names upon the records in the auditor's office, nor that any portion or portions of said land appeared in their name or names upon the tax duplicates, or were assessed for taxes in their names at any tax sale, the land was sold in either the name of Hall or Hitt, never in the name or names of any of the cross-defendants. On October 10, 1930, the appellee Gary Land Company filed a supplemental cross-complaint suggesting the death of the cross-defendant Drusilla Carr, testate, on or about September 14, 1930, and asking that certain of her named devisees be substituted as cross-defendants. This substitution was made as requested.

Upon its special finding of facts the court concluded the law to be as follows:

"1. The Court concluded as a matter of law that the cross-defendants to the amended cross-complaint, and supplemental cross-complaint of Gary Land Company,

namely: Henry Warrum, Daniel E. Kelly, Bertha A. Manlove, Everett G. Ballard, William P. Patterson, Lemuel Darrow, Earl Rowley, Clarence V. Shields, Edward F. Carr, William R. Carr, Fred William Carr, Henry R. Carr, Clara Buckingham, and Nettie Nelles, are the owners, in fee simple, of respective interests in the entire tract of real estate here in controversy, which interests in the aggregate comprise the entire fee simple title in and to said real estate, subject to the lien rights of cross-complainant, Gary Land Company, as hereinafter set out.

"2. The Court concludes as a matter of law that said owners, named in conclusion number one, are, by reason of such interest as owners, entitled to contest and litigate the validity of the respective tax deeds under which cross-complainant Gary Land Company, is claiming title to said real estate.

"3. The court concludes as a matter of law that each of the respective tax deeds under which cross-complainant, Gary Land Company, claims title is invalid as a conveyance of and fails to convey the fee simple title to any of the real estate therein described.

"4. The court concludes as a matter of law that the respective tax deeds under which cross-complainant, Gary Land Company, is claiming title to and rights in the real estate here in controversy were and are of sufficient validity to transfer to the purchaser the lien of the state for taxes and charges for which such sales were made and to vest in the holder of said tax deeds the lien of all taxes including amounts paid at the respective tax sales and taxes thereafter paid and redemptions thereafter made under said deeds.

"5. The court concludes as a matter of law that cross-complainant, Gary Land Company, is the owner and holder of said tax lien rights which are a valid subsisting lien upon the real estate here in controversy in

the aggregate sum of $59,053.23 upon the date of signing and filing the special finding of facts herein, to-wit: September 13, 1930, and the costs of this action.

"6. The court concludes as a matter of law that all or any or more of said owners so named in the first conclusion of law herein shall be given the right to pay off and discharge said lien by paying in at the Clerk's Office of this court the amount of said lien with six per cent per annum interest on said sum from September 13, 1930, to the date of payment, at any time within one hundred and twenty days from the date of judgment herein for the cross-complainant, Gary Land Company.

"7. The court concludes as a matter of law that in default of payment of said lien within the time, of and as provided in the sixth conclusion of law that the equity and right of redemption of all cross-defendants to the amended cross-complaint of Gary Land Company and all persons claiming under them, shall be foreclosed and said real estate, here in controversy, ordered sold as provided by law to make the amount of said claims.

"8. The court concludes as a matter of law that cross-complainant, William P. Patterson, is the owner in fee simple of the real estate described in the first paragraph of his cross-complaint, filed herein on September 12, 1929, and that his title be quieted as against the cross-defendant Gary Land Company, but subject to its rights under its tax liens as heretofore set out."

The appellee Gary Land Company excepted to each conclusion of law separately and severally. The appellants William P. Patterson and Everett G. Ballard excepted to the first, fourth, fifth, sixth, seventh, and eighth conclusions of law separately and severally. The appellants Lemuel Darrow, Earl Rowley and Clarence V. Shields, and the appellees Daniel E. Kelly, Henry Warrum and Bertha A. Manlove excepted to the first,

fourth, fifth, sixth, and seventh conclusions of law separately and severally.

The appellants Lemuel Darrow, Earl Rowley, Clarence V. Shields, Edward E. Carr, Fred William Carr, Henry R. Carr, Everett G. Ballard, and William P. Patterson filed a motion for a *venire de novo*. This motion was overruled. Judgment was entered in accordance with the conclusions of law. From this judgment, William P. Patterson, Clarence V. Shields, Earl Rowley, Lemuel Darrow, Everett G. Ballard, Edward F. Carr, Fred William Carr, and Henry R. Carr appeal to this court, assigning as error for reversal, that the court erred in its first, fourth, fifth, sixth, seventh, and eighth conclusions of law and in overruling their motion for a *venire de novo*. The appellants Edward F. Carr, Fred William Carr, and Henry R. Carr did not except to any of the conclusions of law, so that so far as any errors for reversal are predicated upon the conclusions of law, they have no standing in this court.

The appellants have waived any error predicated upon the overruling of their motion for a *venire de novo* because of their failure to set it out as one of the errors relied upon for reversal, or to discuss it under propositions, points and authorities in their brief. The appellee Gary Land Company has filed cross-errors, assigning as cause for reversal that the court erred in each of its conclusions of law from number one to number eight, inclusive.

The appellants who properly excepted to the conclusions of law contend that the judgment should be reversed: First, because the taxing officers in each and every instance sold an undivided half interest to pay taxes on land assessed as a whole, except in one instance when undivided half interests were assessed separately to different persons, without authority of law, that a

deed issued for an undivided half interest in land is
void and does not carry with it a lien to the purchaser
for the amount of the tax and penalties paid, and for
taxes thereafter paid, they being voluntarily paid inas-
much as the deeds were void. Second, because the court
erred in declaring a lien on lands of appellants located
in the east part of the 88.76 acre tract of land for taxes
on land sold in the west end thereof, and in charging up
taxes levied and assessed against separate tracts in the
west end of the 88.76 acres, while appellant's lands were
neither sold or taxes levied against them, they being in
the east end of the tract, assuming that the sales were
sufficient to convey the liens; that the statute of limia-
ions had not run, and that subsequent payments of taxes
were not voluntary. Third, because the description of
lands assessed and sold as shown by the special finding,
are so indefinite and imperfect, it is impossible to locate
any lands whatever, and there is no finding of fact or
extrinsic evidence identifying the lands. Fourth, be-
cause the purchaser at tax sales of portions of the whole
tract did not take out tax deeds within four years after
certificates of sale were issued so the statute of limita-
tions has run against the liens of such sales, and pay-
ments of taxes made thereafter on the tracts purchased
were voluntary payments creating no lien. Fifth, be-
cause the court erred in declaring a lien on the entire
tract of land for amounts of tax sales had on undivided
interests in portions of the entire tract less than the
whole, and for taxes subsequently paid with interest and
penalties, assuming that the sales were sufficient to
transfer liens which were barred by the statute of limi-
tations, that the subsequent payment of taxes were not
voluntarily paid and the lands on which they could be
paid were identified.

In its brief in support of its assignment of cross-
errors, the appellee Gary Land Company says: that it

assigns cross-errors, not for the purpose of reversing the judgment, but for the purpose of having the judgment affirmed, upon the theory that some erroneous rulings in appellant's favor nullify the effect of the errors of which they complain. The premise for this contention is, that there are no facts found sufficient to sustain the ultimate fact, that the appellants had any right, title or interest in the land in controversy, that they, as disclosed by the special finding of facts, were mere intruders and trespassers upon the land and therefore had no standing as defendants to its cross-complaint, to assail the prima facie title vested in it by the various tax deeds.

The exceptions to the conclusions of law admitted for the purpose of the exceptions only, that the facts upon which the conclusions were based had been fully and correctly found, limited, however, to the facts found within the issues formed by the pleadings. The appellants did not question the truth of the facts contained in the special finding by filing a motion for a new trial. 2 Watson's Works Practice, sec. 1609, and authorities there cited. It is also the law sustained by a long and unbroken line of authorities that the special finding of facts must contain all the fects necessary to entitle the party to a recovery, in whose favor the conclusions of law are found. And on appeal all facts not embraced within the special finding will be deemed as not proven by the party having the burden of the issue, and the failure to find a fact essential to recovery will be regarded as a finding against the party having the burden of proving the same. Watson's Works Practice, sec. 1594.

The parties to this appeal agree that the tax deeds executed and delivered to Frank B. Pattee by the auditor of Lake County were not sufficient to vest in him the fee simple title to the tracts of land which he had

purchased at the several tax sales. The questions then which require consideration are: (1) Were the tax deeds and the steps preceding their execution sufficient to transfer to the purchaser at the tax sales the lien of the state on the tract or tracts of land against which the taxes were assessed? (2) If the liens were transferred, did the trial court err in holding that they attached to the entire 88.76 acres of land and foreclosing such liens against the same? (3) Had the statute of limitations run, thereby precluding the right of foreclosure on behalf of the Gary Land Company? We will consider these questions together.

All of the proceedings leading up to and including the tax sales and the deeds executed thereafter were had under the tax law of 1891, Acts 1891, p. 199, and amendments thereto, adopted previous to 1919, so that law and its amendments control in the determination of this case. Many of the provisions of the tax law of 1891, *supra,* or their substance composed a part of the tax law of this state, prior to the passage of that act, and much of the tax law as it existed before the passage of the act of 1919, Acts 1919, p. 198, was included in that act. The various provisions of our tax law, as they have existed for many years, without substantial change, have frequently been construed by our courts.

In the case of *State ex rel. MacKenzie* v. *Casteel* (1887), 110 Ind. 174, 11 N. E. 219, our Supreme Court in a very exhaustive and learned opinion set forth the rule followed by the courts in construing statutes in this language (p. 183) : "The cardinal rule in the construction of statutes is to discover and give effect to the intention of the Legislature. The construction adopted will give effect to the intention of the law-making power, and will not subordinate it to an isolated clause. It will give effect to the leading and controlling purpose of the statute, rather than bend to particular sentences or clauses,

and this, as all the authorities agree, is the great object of judicial interpretation." This case also contains a discussion and explanation of the purpose and policy of the tax laws of this state, which has been adhered to ever since its pronouncement.

The necessity of setting out all the various sections of the statutes or their substance, which may have some potency in a solution of the questions confronting us in the instant case does not exist. In the case of *Travelers Insurance Co.* v. *Martin* (1891), 131 Ind. 155, 158, 30 N. E. 1071, the court said: "The sections of the statute relating to and governing the question presented in this case are so fully set out, discussed and construed in the decisions which we have cited, that no good purpose can be subserved by again setting them out, and adding additional views in support of the construction placed upon them. We regard the decisions as harmonious and have no disposition to depart from the construction placed upon the statute in such decisions, and we are only called upon in this case to apply the principles laid down in the decisions cited."

In this same case, the court, in commenting upon the aim and purpose of our statutes relating to the levying and collection of taxes and duties resting upon land owners in relation thereto, said (p. 158) : "It was the intention of the law in relation to the assessment and collection of taxes, that there should be an incentive on the part of property owners to pay their taxes, and upon a failure so to do, that a penalty should attach which they would be compelled to pay, and there has been a growing tendency to fix with more certainty the lien upon the property, and to remove all technicalities by which the property-owner might defeat a recovery for the taxes and penalties assessable against his property as its proportion of the revenue necessary to carry on the affairs of the government. With this view the

statute was enacted providing, that, if the purchaser failed, for any cause, in his right to recover in an action to quiet his title, he should in the same action, without liability for costs or amendment of pleadings, or an adjustment of the issues, recover a judgment for the amount of the taxes paid by him, together with penalties, and have a lien declared and foreclosed. Every land-owner knows that he is liable for taxes upon his land, and that it should be assessed and entered upon the books of the auditor and treasurer of the county. It is his duty to look after the assessment of his property and see if the assessment is regular, and his land properly entered upon the books and pay the lawful taxes when due, instead of seeking some method by which he can, by reason of a technically defective description, avoid the payment of his just portion of the expense of a government in which he is equally interested with others. The rule established and fixed by the many decisions of this court that the lien will hold if the purchaser can show what property was intended to be taxed is but a salutary and just one."

While the appellants vigorously contend that the taxing officers of Lake County had no authority to levy taxes against or sell an undivided half interest in the land in question, for the satisfaction of delinquent taxes, and that therefore the sales were void, and that the lien of the state was not transferred to the purchaser at the tax sale, in the argument accompanying their brief, counsel for appellants say, they are frank to admit that they have found no Indiana case directly in point. This court, after a thorough and exhaustive search of our decisions, has not discovered that facts similar to those here involved have heretofore been considered by our courts of last resort. We must therefore look to the tax laws of our state in force at the time the transactions in question occurred as construed

by our courts and to the authorities of other states (which we recognize are influenced by local statutes) for assistance. When we do that the inevitable conclusion is reached, that the assessment and sale of the land in the manner adopted by the taxing officers, though it may have been irregular, and did not convey the fee simple title of the land to the purchaser, was not void, and that, therefore, a lien for the taxes paid passed to the purchaser when the tax deeds were executed. Sections 10170, 10187-8, 10272, 10319, 10343-4, 10346-7, 10359-60, 10364, 10366, 10368-75, 10379-80, 10387-8, 10390, 10392-5, Burns 1914.

The principles of law announced in *Travelers' Insurance Co.* v. *Martin, supra,* heretofore quoted, apply with much force to the facts in this case.

In the case of *Noble* v. *City of Indianapolis* (1861), 16 Ind. 506, where land was assessed in the name of "Noah Noble's Heirs," the court quoted with approval from *Robinson* v. *Garr* (1857), 6 Cal. 273, as follows (p. 510) : "The plaintiffs are the best judges of their own title, and must determine, at their own risk, whether it is worth paying taxes on, or not; that they cannot assert the ownership of the land, and deny the legal consequences of such right, applies with peculiar force to this case. The appellants are either the owners of the land, or they are not. If they are the owners, they must pay taxes, and cannot complain; and if they are not the owners, they have no interest in the matter, and cannot complain. In either case, therefore, they have no right to complain." And this was a suit instituted by "Noble's Heirs" to enjoin a sale for taxes, on the ground, alone, that the assessment to "Noble's Heirs" was void. The injunction was denied. For other cases in harmony with this opinion, see *Sloan* v. *Sewell* (1881), 81 Ind. 180; *Morrison* v. *Jacoby* (1888), 114 Ind. 84, 14 N. E. 546; *Jones* v. *Foley* (1889), 121 Ind. 180, 22 N. E. 987.

The case of *Jenkins* v. *Rice* (1882), 84 Ind. 342, was an action to quiet title to real estate under a tax title, or in case the tax sale was found to be irregular, to enforce the lien allowed by the statute. The lien was foreclosed. It was alleged in the complaint that the land "had been duly assessed and properly charged on the tax duplicate in the name of Jenkins' heirs, with taxes for the year 1873 and former years, amounting," etc. Contention was made that the complaint was not sufficient because it failed to show, quoting (p. 344): ". . . 'whether the land was owned by the defendants as tenants in common, or as joint tenants: nor what was the interest of each'; and, assuming that the defendants must be regarded as equal owners as tenants in common, counsel insist that the undivided share of each was liable only for its own proportion of the tax, and no more, that, under the assessment law, each person's land must be separately taxed; and that, to make the complaint good, it should be shown that defendants received the title by descent, devise or by deed from one possessed of the entire title, and that the delinquent taxes of 1873 and prior years, for which the sale was made, originated from one common source against the entire tract." After quoting sec. 6321, Statutes 1881, which was sec. 10187, *supra,* which provides for the method of listing undivided real estate, the court said (p. 345): "While there seems to be and to have been no specific provision, to the same effect, in reference to lands held by tenants in common, whose title was derived otherwise than by descent or devise, where the proper transfers of record had not been made, yet there is a practical necessity for application substantially of the same rule; and the various provisions of the tax law, considered together, shows that such was the legislative intention. . . .

"Consistently with all these provisions, in cases where

the proper transfers have not been made, it would be impracticable to administer the law and to enforce the payment of taxes upon the rule contended for by counsel; and even if the proper transfers have been made, and yet, through the neglect or mistake of the officers, parcels of property are assessed and taxed in the wrong name, as entireties, *in disregard of the separate rights of tenants in common, or of the respective owners, of whatever character of interest or ownership, the rights of the public are not diminished; and the purchaser, if the tax sale be invalid, is subrogated to the lien of the State, which he may enforce by obtaining a decree of foreclosure.*"  (Our italics.)

In *Eads* v. *Rutherford* (1888), 114 Ind. 273, 16 N. E. 587, the land was entered on the tax ruplicate for taxation in the name of "Burkett Ead's heirs"; the court, in reversing the case and holding that the appellant was entitled to foreclose his lien, said (p. 273) : "The taxes were not invalidated by the method in which the owner's name was entered on the duplicate.  An error in listing the taxes does not destroy the lien or relieve the owner from paying them.  Persons who own land are chargeable with knowledge that it is liable to taxation; and if they neglect to pay what they know it is their duty to pay, they cannot escape liability on the ground of some error or inaccuracy in naming the owners; at all events, not upon such an inaccuracy as that shown by the complaint.

"It may, perhaps, be true that, under our statute, the appellant might have elected to pay the taxes on his undivided half of the land, but he was not bound to pursue this course.  He had a right to pay all the taxes and prevent a sale of any part of the land. Taking all the sections of the statute together, the reasonable construction is, that one to whom land descends jointly with other heirs may either pay the taxes due on his

undivided interest in the land or he may pay all the taxes and enforce contribution. Either this construction must be adopted, or many clear provisions of the statute be overthrown."

The following cases from other jurisdictions, in construing their tax laws, hold that an undivided interest in a tract of land can be assessed and sold for taxes. *Halbouer* v. *Cuenin* (1909), 45 Colo. 507, 101 Pac. 763; *Jenswald* v. *Doran* (1889), 77 Ia. 692, 42 N. W. 465; *Payne* v. *Danley* (1857), 18 Ark. 441; *Sheafe* v. *Wait* (1858), 30 Vt. 735; *Ronkendorff* v. *Taylor* (1830), 29 U. S. 348, 7 L. Ed. 882. In support of their contention, appellants have cited and relied upon *Corbin* v. *Inslee* (1880), 24 Kan. 154, decided by a divided court; *Curtiss* v. *Sheffield* (1913), 213 Mass. 239, 100 N. E. 365; and *Toothman* v. *Courtney* (1907), 62 W. Va. 167, 58 S. E. 915. In no one of these cases did the court hold that the lien for taxes did not attach to the land or was lost to the purchaser at a tax sale. In the Toothman case, *supra,* a decree was entered by the lower court, setting aside a tax deed and conveying an undivided interest in land. Upon appeal, the court held (p. 185), that while such a deed was irregular and could be set aside, that the plaintiff's bill was fatally defective, for, "it does not tender the tax sale purchase money and taxes subsequently paid, in obedience to the statutory requirement in such case, nor does it aver the plaintiff's readiness and willingness to reimburse the purchaser, nor does the decree in any way secure to the defendant his right of reimbursement. For this reason, the decree will have to be reversed and the cause remanded with leave to the plaintiff to amend his bill in this respect. (Citing authorities.) The court below, deeming the assessment, sale and deed fraudulent and void, held reimbursement not necessary. We do not concur in this view. It was an

irregular and defective assessment and sale, not cured by the statute."

It was the evident intent of the legislature not to permit the evasion and non-payment of taxes, because of the matter of form in the proceedings, not affecting the merits of the case, for by sec. 10395, *supra,* it is declared in part as follows: "No general or specific tax authorized by the laws of this state, and which shall be assessed on any property in any township, city or town within this state by any officer authorized to make assessments or which if made by another person or may be adopted by such officer as his act shall be held to be illegal or invalid for want of any matter of form in any proceedings not affecting the merits of the case, and which shall not prejudice the rights of the party assessed. And all taxes assessed upon any property in this state shall be presumed to be legally assessed until the contrary is affirmatively shown."

By the provisions of sec. 10380, *supra,* which is sec. 14327, Burns 1926, §64-2404, Burns 1933, a tax deed is prima facie evidence of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, and prima facie evidence of a good and valid title in fee simple in the grantee in said deed, and, if the description of the land in a tax deed is too indefinite to convey title, the purchaser is entitled to a lien upon the land for the taxes paid, interest and penalty legally due thereon at time of sale with interest, together with all subsequent taxes paid with interest. Sec. 10388, *supra,* which is sec. 14335, Burns 1926, §64-2412, Burns 1933; *Reed* v. *Earhart* (1882), 88 Ind. 159; *Locke* v. *Catlett et al.* (1884), 96 Ind. 291; *Peckham* v. *Millikan* (1885), 99 Ind. 352; *Scott* v. *Millikan* (1885), 104 Ind. 75, 3 N. E. 647; *Armstrong* v. *Hufty* (1901), 156 Ind. 606, 55 N. E. 443, 60

N. E. 1080; *Green* v. *McGrew* (1904), 35 Ind. App. 104, 72 N. E. 1049, 73 N. E. 832; *Sansberry* v. *Cornelius* (1924), 82 Ind. App. 156, 145 N. E. 521; *Demoney* v. *Board, etc.* (1929), 91 Ind. App. 365, 169 N. E. 67; *Sloan* v. *Sewell, supra; State ex rel. MacKenzie* v. *Casteel, supra.*

The appellants argue with much force that the court erred in foreclosing all the tax liens against the entire tract of land. An application of the law to the facts as found by the court does not sustain them in this contention. Sec. 10344, *supra,* provides: "All the property, both real and personal, situated in any county, shall be liable for the payment of all taxes, penalties, interest and costs charged to the owner thereof in such county, and no partial payment of any such taxes, penalties, interest or costs shall discharge or release any part or portion of such property until the whole is paid; which lien shall in nowise be affected or destroyed by any sale or transfer of any such personal property, and shall attach on the first day of March, annually, for the taxes of such year." *Gable* v. *Seiben* (1894), 137 Ind. 155, 36 N. E. 844.

Our Supreme Court, in construing this section of the tax law in the case of *Beard* v. *Allen* (1894), 141 Ind. 243, 248, 39 N. E. 665, 40 N. E. 654, said: "It appears from the provision of the tax law cited that this lien is made perpetual for all taxes due from the owner, and that all property owned by the tax debtor, both real and personal, situated in any county, is made liable for the payment of all taxes charged to him or her. As said by this court in *Justice* v. *City of Logansport,* 101 Ind. 326: 'It would have been difficult, if not impossible, for (the law makers) to have employed stronger words.' The liability thus incurred ceases only with payment."

In the case of *Jenkins* v. *Rice, supra,* complaint similar to that of appellants was interposed to the foreclos-

ure of a tax lien. The Supreme Court disposed of it in the following language (p. 345) : "In the proceeding to foreclose in such case, the most which would seem permissible to the defendants would be to show by answer their separate respective interests, and so procure an apportionment of the liability. In the absence of proper transfers, the state, by its officers, is not bound or able to know the rights of such owners. (Citing authority.) And the purchaser at the sale, seeking to enforce a lien only, and not claiming a valid title under his purchase, can reasonably be required to do no more than recognize such rights, when pleaded and proved by those who assert them. The lien of the state, and consequently the purchaser's subrogation do not depend upon the assessment being made in the name of the owner." The appellants did not discharge this burden.

In *Peckham* v. *Millikan, supra,* appellant sought to set aside a sale of his land for taxes and to quiet his title thereto. The appellant had not paid or offered to pay the taxes. In passing upon the sufficiency of the second paragraph of complaint to state a cause of action, the court said (p. 355) : "This paragraph was, as it seems to us, radically defective, because it fails to show that these taxes were paid or tender of payment made before suit brought, or that these taxes were not a lien upon the land.

"This is an application to a court of equity to remove a cloud from the appellant's title, and it is well settled that so long as any of the taxes legally due remain unpaid, such court will not aid a party unless he offers to pay the taxes due."

In the case under consideration, the appellants are seeking to invoke the converse of this rule, that is, they, as defendants to the cross-complaint of the Gary Land Company, want the court to declare the lien for taxes void or hold that the lien was not transferred to the

purchaser at the tax sale, thus clearing the land from the effect of the lien, and giving to them equitable relief, without in any way doing or offering to do equity themselves.

The taxes became a lien upon the land on the first day of March each year. Sec. 10343, *supra.* From this provision of the statute and other provisions heretofore cited, this tax lien is made perpetual for all taxes due from the owners of the land, all property owned by the tax debtors, both real and personal, situated in any county, is made liable for the taxes charged to him or her. The only way to escape this liability is by payment of the tax. *Beard* v. *Allen, supra.* The appellants have not discharged the duties imposed upon them by the rules of equity which must be recognized in this case.

The appellants cannot avail themselves of the four year statute of limitations. The court found that in each instance Frank B. Pattee surrendered the certificate of sale issued to him within less than four years from the date of its issuance and caused a tax deed to be executed and placed on record in Lake County, as required by the law. This was sufficient to transfer the lien for taxes to the grantee in the deed. See authorities heretofore cited.

During the entire period of fifty-four years, from 1876 to the date of the trial of this cause, neither Drusilla Carr nor any of the cross-defendants to the cross-complaint of the Gary Land Company, nor any one on behalf of any of them, ever paid, redeemed or tendered any of the taxes upon the tract of land, or any part thereof, except the amounts paid by the appellees Kelly and Manlove, who, so far as the record shows, are content with the judgment of the lower court. No legal impediment ever prevented Drusilla Carr or the other cross-defendants from paying the taxes. They began to go delinquent in 1910 and contin-

uously thereafter, and from that time, continuously to the date of the trial of this cause, all the taxes assessed against the land were paid and discharged by Frank B. Pattee or the Gary Land Company. During all these years, the land never appeared upon the tax records, nor was it assessed in the name of Drusilla Carr nor any of her immediate or remote grantees. No effort was ever made by any of them to have the tax records corrected if they were wrong. Appellants were charged with knowledge of all these facts. They do not assert that the land was not subject to taxation, that the taxes were wrongfully assessed or that they had ever paid or offered to pay them. If the appellants were the owners of the land, it was just and right that they should pay the taxes assessed against it. The land was sold for delinquent taxes, it was shown by the purchaser, and the court found what land was intended to be taxed, definitely describing the same, and that it was not redeemed. There is no reason disclosed by the finding of facts why the lien should not attach and be foreclosed, in fact quite the contrary appears. The appellants, without discharging any of the burdens which the law imposes upon them, are endeavoring to evade the payment of the taxes by invoking technicalities which the law does not recognize nor the courts encourage.

Finding no error, the judgment is affirmed.

Curtis, J., not participating.