HOLLARS *v.* STEPHENSON.

[No. 18,088. Filed June 8, 1951.]

*Tucker & Tucker*, of Paoli, for appellant.

*Mead & Mead*, of Salem, for appellee.

BOWEN, J.—This is an appeal from a judgment in a cause of action to quiet title and for an injunction. The appellee, William T. Stephenson, filed his complaint against J. William Hollars, who died during the pend-

ency of this action, and his wife, Lola Hollars, the appellant herein, in one paragraph to quiet title to certain real estate. The court sustained a demurrer to the original complaint, and the appellee filed an amended complaint to quiet title and for an injunction alleging that he was the equitable owner of the real estate in question and that his title be quieted thereto, and that the appellant be enjoined from entering upon the real estate in question.

Issues were joined upon appellee's amended complaint and appellant's answer and cross-complaint in which appellant also sought to quiet her title to such real estate. Appellant also filed a motion to quash the injunction and to dissolve the injunction and the restraining order.

From the record it appears that on the 4th day of October, 1946, one Ethel L. Dean was the owner of 176⅔ acres of real estate in Washington County, Indiana. The 18 acres of real estate in dispute owned by her were located on the west side of the Chicago, Indianapolis, and Louisville Railroad, and were a part of a tract of 96⅔ acres, the balance of which tract was located on the east side of said railroad. The remainder of the real estate of said Ethel L. Dean consisted of 80 acres located on the west side of said railroad.

The court found that on the 9th day of October, 1946, Ethel L. Dean sold to the appellant and her deceased husband all of the real estate owned by her lying east of said railroad, and that Ethel L. Dean sold to the appellee all that portion of land owned by her which was located on the west side of the railroad. Special Finding No. 4 is to the effect that after said sales were made, Ethel Dean and her husband executed and delivered the deeds to the said purchasers, intending to convey to them the respective tracts so purchased

by them. Special Finding No. 5 is to the effect that through the mutual mistakes of said parties to said deeds of conveyance and without fraud on the part of the appellee, the 18 acres of land owned by Ethel L. Dean lying west of the railroad was included in the deed of appellant and her deceased husband and was omitted from the deed of the appellee. The court further found that at the time the appellant and her deceased husband purchased the real estate, they knew the real estate in question on the west side of the railroad had been sold to appellee, and that appellee had taken possession thereto, and that at the time the action was filed, the appellant and her deceased husband were claiming an interest in that portion of said real estate lying west of said railroad, adverse to appellee's claim, and were threatening to enter upon said disputed tract and to take possession of the same to the great loss and damage of appellee for which appellee had no adequate remedy at law, and that the appellant, Lola Hollars, was the surviving wife of J. William Hollars, and became the sole owner of the real estate purchased by her and her deceased husband from Ethel L. Dean.

The conclusions of law were to the effect that the law was with the appellee and that he should recover on his amended complaint, and that appellant take nothing on her cross-complaint, and that appellee was entitled to a permanent injunction against the appellant enjoining her from interfering with appellee's peaceable possession of the real estate, and that the claims of appellant were unfounded, and that appellee was entitled to have his title quieted to said real estate.

The court rendered judgment on such findings and conclusions of law in favor of appellee and against appellant.

From the evidence, it appears that appellee's deed was executed on the 7th day of October, 1946, and

appellant's deed was executed on the 9th day of October, 1946. After the execution of the deed to appellee on October 7, 1946, the same was left at Mark's Abstract Office for the appellee. The appellee called for such deed at the abstract office October 21, 1946, and recorded the same on October 30, 1946. Appellant's deed was delivered to her and her deceased husband on the 9th day of October, 1946, and was recorded by appellant and her deceased husband on the 15th day of October, 1946.

Errors assigned for reversal are that the court erred in overruling appellant's motions to quash the writ of injunction and dismiss the injunction, and that the court erred in each of its conclusions of law, and in overruling appellant's motion for a new trial, grounds of which motion were that the decision of the court was not sustained by sufficient evidence and was contrary to law; that the court erred in permitting Ethel L. Dean and George Dean, grantors of the deed to appellant and her deceased husband to answer certain questions which appellant claims were an impeachment of her deed; and, also an attempt to vary a written instrument by parol evidence after due execution thereof; that the court erred in its findings of facts for the reason that no evidence showed that appellant and her deceased husband knew that the real estate on the west side of the railroad had been sold to appellee prior to the date of the deed to appellant and her deceased husband.

The assignments of error, by reason of the rule of law prohibiting the admission of parol or extrinsic evidence to vary the terms of a written instrument except in the case of accident, mistake, or fraud, presents for our determination the question as to whether the record in this case shows a mutual mistake and knowledge of such mistake on the part of the appellant

and her deceased husband at the time these transactions were entered into.

We are further called upon to determine whether under the law and the evidence of this case appellee is entitled to have his equitable title to this real estate quieted in this action.

From the evidence it appears that on October 4, 1946, Ethel L. Dean was the owner of a farm in Washington County, Indiana, containing 176⅔ acres more or less in which the Monon Railroad extends in a northerly and southerly direction. The appellee contends that the evidence shows it was the intention of the parties that all the land west of the railroad was to be sold to appellee, and that appellant purchased all of the land east of said railroad, and that by reason of the mistake of all the parties and the scrivener, 18 acres of land west of the railroad was included within the appellant's deed by the scrivener making the section line the dividing line instead of the railroad as was intended by the parties to the deed. The appellant on the other hand contends that the evidence leads inescapably to the conclusion that appellant negotiated for and purchased 96⅔ acres, and that he was entitled to the real estate described in his deed which included the 18 acres on the west side of the railroad. Mr. Stephenson, the appellee, went into possession of all of the real estate on the west side of the railroad, patched up some fencing and turned in a large number of cattle on the day his deed was executed. Mr. and Mrs. Hollars paid taxes in 1947, but let the 18-acre tract go delinquent. Appellee paid these delinquent taxes in the spring of 1948 and paid the taxes on the 18-acre tract thereafter. The appellee exercised the rights of ownership over the 18-acre tract during a 5-month period before a representative of the Federal Land Bank discovered that the Hollars' deed included lands west of the railroad.

This representative told Mr. Hollars of the discovery and informed Mr. Stephenson, the appellee, who had already received the information from the abstract office a few days before. Soon after learning the condition of the deeds, Mr. and Mrs. Hollars attempted to exercise rights of ownership over the 18-acre tract and the appellee instituted the present action on May 16, 1947.

There is ample evidence in the record to sustain an inference that the appellant and her deceased husband had knowledge that the deed which they were to receive and did receive from the Deans was not intended to include any real estate west of the railroad, nor is there any evidence showing that any land west of the railroad was pointed out to appellant or shown to the appellant and her deceased husband at the time the transaction was effected.

There is evidence in the record that the appellant's deceased husband subsequent to the purchase of the real estate in question in the Federal Land Bank office, when asked the question before a number of witnesses, "You just bought all that was on the east side of the railroad, didn't you?" answered, "Yes, but I was supposed to get so many acres."

There is also testimony in the record on the part of appellant in which appellant's deceased husband is quoted as follows: "He (appellant's deceased husband) also told me that Mr. Dean showed him all boundaries and he told me before Dean left—he told me his west boundary was the railroad." And further, the evidence shows that quite a few conversations along that line were had between appellee and appellant's deceased husband.

Hollars never learned of the mistake in the deed, nor did he attempt to exercise any dominion over the real estate in question until the Federal Land Bank

told him that his deed included real estate west of the railroad.

Statements of appellant's deceased husband that showed his understanding that the land purchased by him was all on the east side of the railroad, and his failure to exert any dominion over this land in question would be sufficient to support an inference that Mr. Hollars had knowledge of the mutual mistake at the time the deed was prepared, including the real estate west of the railroad. This is true without including the testimony of either of the Deans, the grantors in the deed. The fact that there is a mistake in the description contained in a deed is a fact that can be established by circumstances as well as by direct proof. *Garard* v. *Weaver* (1908), 42 Ind. App. 110, 84 N. E. 1092.

However, appellee's amended complaint contained an allegation of mistake, and the evidence of Ethel L. Dean and her husband was competent for the purpose of showing the intention of all the parties as to such mistake at the time the deeds were executed to both appellant and appellee. The court did not err in permitting such witnesses to testify as to the intention of the parties at the time the deeds were executed as bearing upon the question of mutual mistake of all of the parties.

The parol evidence rule is subject to exceptions and is not applied to a situation where, by reason of mutual mistake of fact, instruments have been so framed as not to express the true agreement of the parties. *Citizens' National Bank of Attica* v. *Judy, et al.* (1896), 146 Ind. 322, 43 N. E. 259; *Schlosser* v. *Nicholson* (1916), 184 Ind. 283, 111 N. E. 13.

Ethel L. Dean testified on direct examination that Mr. and Mrs. Hollars wanted to buy the land on the east side of the railroad track, and she told them she

had already sold the land west of the railroad to the appellee. She also testified that there was nothing said about Mr. Hollars wanting to buy 96⅔ acres. While, it must be admitted that there is considerable evidence, including the evidence of the agent who conducted the transaction, that the real estate the Hollars were to receive was to contain in the neighborhood of 100 acres of land, nevertheless, there is a complete dearth of evidence to show that any of such land was to be on the west side of the railroad. George Dean testified that at the time the transaction was consummated, he pointed out no lands to Mr. Hollars except those east of the railroad, and that he told Mr. Hollars that he had sold all lands west of the railroad 2 or 3 days before.

It seems quite clear from all the facts and circumstances of this case that Mrs. Hollars, the appellant, and her deceased husband obtained their deed with notice of the equitable title held by appellee, and, therefore, appellant's title was taken subject thereto.

The appellant insists that appellee had an adequate remedy at law. From the evidence of appellee it appears that he desired this particular 18-acre tract because of a desirable spring and water supply for adjoining pasture lands. The real estate agent, a witness for appellant, testified that George Dean told him that the appellee would not buy unless he got the spring down near the railroad. It seems clear that his remedy at law was inadequate. The appellant further insists that the appellee should have brought an action against Ethel L. Dean, the vendor of the property in question. This cause being an action to quiet the equitable title of appellee by its nature presents the question as to whether or not the grantors of the appellee were necessary parties to this action by reason of the rule of equity that equity seeks

to put an end to litigation by doing complete and final justice. The object of the cause of action was to quiet the equitable title to the land in dispute as against the *claim of appellant*. It has been settled by the Supreme Court of Indiana that the appellee was not required to sue the vendors or make the vendors parties to this suit to quiet his equitable title. *Warbritton* v. *Demorett* (1891), 129 Ind. 346, 27 N. E. 730.

The main contention of the appellant seems to be based upon the fact that she and her husband negotiated for a tract of approximately 100 acres, and that they were entitled to the full 96⅔ acres included within their deed. The evidence is conflicting on the question of the total acreage the appellant and her deceased husband were to get, and there are witnesses on behalf of appellee who testified that the tracts were sold as portions west of the railroad and east of the railroad. On the question of acreage, the courts have held that "the quantity of land contained in a tract is the least important element in determining the boundary." *Gary Land Co.* v. *Griesel* (1913), 179 Ind. 204, 100 N. E. 673.

It has been held that the order of preference for the location of boundaries, other things being equal, is first, natural objects or land marks, artificial monuments, adjacent boundaries, courses and distances, and lastly quantity. *Haverstick* v. *Beaver* (Ohio App., 1941), 37 N. E. 2d 650.

On the conflicting evidence as to the intention of the parties and the question of mutual mistake, we cannot substitute our judgment for that of the trier of the facts. *Baltimore & Ohio Railroad Co.* v. *Reyher* (1939), 216 Ind. 545, 24 N. E. 2d 284; *Robbins* v. *Spencer* (1894), 140 Ind. 483, 38 N. E. 522. In the case before us, the court could have properly inferred and concluded that it was the intention of

all of the parties to the transactions in question that the vendor sold to the appellant and her deceased husband all of the real estate owned by her on the east of the railroad and that the 18 acres west of the railroad was intended to be included in the deed executed to appellee, and that a mutual mistake, contrary to the intention and knowledge of all of the parties, including appellant, was made at the time the deeds were prepared and executed.

The court did not err in overruling appellant's motions to quash the writ of injunction and to dismiss the injunction. The court did not err in its conclusions of law, and the decision of the court was sustained by sufficient evidence and was not contrary to law, and the court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 99 N. E. 2d 258.