BABCHUK ET UX. *v.* HEINOLD ELEVATOR CO., INC.

[No. 768A127. Filed April 7, 1969. No petition for rehearing filed.]

*Worth N. Yoder, F. Leroy Wiltrout,* of Elkhart, for appellants.

*Nichols & Nichols, David J. Wallsmith,* of Knox, for appellee.

COOPER, J.—This is an appeal from the Starke Circuit Court wherein the Appellee Heinold Elevator Company, Inc., brought an action to recover a judgment against the appellants, William and Helen Babchuk upon an alleged open account.

The record reveals that the issues were formed by the Appellee's Complaint and the Appellants' Answer thereto. It appears that the complaint alleged the sale and delivery of feed and grain to the Appellants by the Appellee, and the alleged indebtedness of the Appellants for the same.

The defendants filed an answer in denial. Thereafter the plaintiff filed a Motion for Summary Judgment, together with a supporting affidavit. The defendants then filed an opposing affidavit and thus presented the trial court with the question of whether there was a genuine issue as to any material fact, and also whether or not the plaintiff was entitled to judgment as a matter of law as provided by Section 2-2524 of Burns' Indiana Statutes, (1968 Repl.).

The affidavit filed in support of the plaintiff's Motion for Summary Judgment reads as follows:

"John Schnurlein, being duly sworn upon his oath, deposes and says:

"1. That as the Credit Manager for Heinold Elevator Company, Inc., Knouts, Indiana, plaintiff in the above entitled cause, he is in charge of collecting the amount due on the open account sued upon. That said cause of action is to recover the sum of $5,239.16 for certain chicken feeds and grains delivered to the defendant at the defendant's special instance and request.

"2. That the affiant has been in the continuous employment of the plaintiff since 1960, which is during the period when the account in question was compiled.

"3. That the affiant is familiar with the bookkeeping procedure used by Heinold Elevator Company, Inc. That the following is the procedure by which transactions are recorded:

"Orders are received by the Sales Department by mail, telephone, or from the deliverymen. From the Sales Department they go to the Shipping Department, at which times the orders are prepared and filled. In the case of bulk sales and deliveries, a 'triplicate register' is used, which consists of the original and two copies of the sales ticket, which indicate the quantity, description, price, total cost, and the manner of payment for the goods so sold and delivered. These tickets are made up at the time the feed leaves the elevator. Tickets at this time are either mailed to, or may accompany the delivery of the feed if the customer so prefers. The feed is then delivered by the Heinold deliverymen to the customer. After the delivery of the feed, the retained copy of the sales ticket is returned by the deliverymen to the main office. In the case of charge accounts, the tickets are immediately filed and posted on our National Cash Register bookkeeping machine. Statements are rendered between the first and fifth of each calendar month showing the total number of transactions with invoice numbers for the month, between the Heinold Elevator and the customer, and the total balance due from the customer to the Heinold Elevator upon the account. These statements are mailed to the customer and after thirty days a carrying charge for past due accounts is added. This is the policy now in effect and was in effect during the period in which the account herein sued upon was made.

"4. That the accounts receivable ledger which is attached to the plaintiff's complaint as Exhibit A and sup-

plemented by the bill of particulars filed by the plaintiff herein is a true and accurate record of the account between the Heinold Elevator Company and the defendants, William Babchuk and Helen Babchuk.

"5. That the entries thereon made were prepared in the ordinary course of business according to the system which I have previously described. That the entries thereon made are true and correct.

"6. That the deliveries of chicken feed and grains, as evidenced by the aforesaid accounts receivable ledger were made at the special instance and request of the defendants.

"7. That the defendants are currently indebted to the plaintiff in the sum of $5,239.16 and that said sum is now past due and wholly unpaid.

"8. That the defendants have refused to make further tender of payments upon such indebtedness and there has been an unreasonable delay in paying said account.

"9. That all the facts set forth in this affidavit are within the personal knowledge of the affiant, and the affiant, if sworn as a witness can testify competently thereto.

"WHEREFORE, affiant prays that judgment be ordered for the plaintiff and against the defendant in the sum of $5,239.16 together with costs."

The defendants' affidavit opposing said Motion for Summary Judgment is as follows:

"William Babchuk and Helen Babchuk, being first duly sworn upon their separate oaths depose and say:

"1. That affiants are the defendants in the above entitled cause.

"2. That affiants have been purchasing feed and grain for their chickens since October of 1962 from the plaintiff, and that the great majority of said feed and grain was delivered in bulk without scale stamping of weight of feed delivered.

"3. That during the entire time the affiants were receiving said grain and feed for their chickens, an accurate record was kept of the number of layers in operation and the number of eggs produced.

"4. That the affiants are experienced poultrymen and verily believe that they could not have received the quantity of feed with the percent of protein, i.e., 17% as warranted in the plaintiff's bill of particulars, for the reason that it is impossible for the said number of chickens defendants had in operation to consume said amount of feed as claimed to have been delivered to them by the plaintiff, and produce the amount of eggs recorded.

"5. That the defendants by reason of the short weight and inferior quality of the feed and grain delivered by the plaintiff, suffered a loss in egg production, for which they feel they are entitled to $20,000.00 in damages from the plaintiff.

"6. That the affiants desire to file a counter claim against the plaintiff and that the issues be submitted to trial by jury.

"WHEREFORE, the defendants pray that the plaintiff's motion for summary judgment be overruled and that they be permitted to file a counter claim for damages against the plaintiff, and that all issues of this cause be submitted to a trial by jury."

Notwithstanding the fact that the pleadings in the record now before us, together with the affidavits in support of, and in opposition to the motion for summary judgment, presented genuine issues of fact to the Court which should have been tried by a jury, the trial court entered the following finding and judgment:

"Comes now the plaintiff by counsel, and come now the defendants by counsel, and the defendant files Affidavit in opposition to the plaintiff's Motion for Summary Judgment, (H.I.). And this cause is now submitted on the plaintiff's Motion for Summary Judgment and the affidavits of the parties, and the Court being fully advised in the premises, finds that no genuine issue as to any material fact has been shown to exist, and that the plaintiff is entitled to judgment in the sum of $5,239.16 together with interest thereon in the sum of $261.96.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff have and recover of and from the defendants the sum of $5,501.12.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the costs of this action be taxed to the defendants in the sum of $————.

"Dated this 3rd day of May, 1968."

Our Supreme Court in the case of *Kapusta v. DePuy Manufacturing Company* (1968), 249 Ind. 679, 234 N. E. 2d 487, in denying transfer, made the following pertinent statement:

"Ind. Ann. Stat. § 2-2524(c) (Sup. 1967) provides:

'The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...'

"We construe the words 'if appropriate' in subsection (e) in light of subsection (c) to still require a finding that there is no genuine issue as to any material fact, whether or not counter-affidavits are filed. Our statute is patterned after Federal Rule of Civil Procedure 56 and we believe the Advisory Committee's Notes of 1963 to the last two sentences of subdivision (e) are appropriate : '... The Amendment (is not) designated to affect the ordinary standards applicable to the summary judgment motion.' "

The basic purpose of the Indiana Summary Judgment Statute (Burns' Ind. Statutes Ann. (1968 Repl.) Sec. 2-2524 is to provide a procedural device for prompt disposition of cases where there is, in reality, no genuine issue of fact to be determined in a trial, either by a court or by a jury. In addition, the summary judgment proceeding is not for the purpose of permitting a trial of real and genuinely contested issues of facts by affidavits and the other pleadings, because a summary judgment proceeding is not a trial in the usual sense, as its real purpose is for the determination of whether there is a genuine issue to be tried. See, *Crosby et al. v. Oliver Corp.*, 9 F.R.D. 110, (S.D. Ohio 1949).

Since our statute is relatively new and the decisions of our Supreme Court and this Court are few in construing the

statute, we believe it is appropriate to review the federal court decisions construing Federal Rule 56.

The Fourth Circuit, in the case of *Pierce et al. v. Ford Motor Co. et al.*, (4th Cir. 1951) 190 F. 2d 910, noted at page 915 the following:

"It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trial or have the judge weigh evidence in advance of its being presented. We had occasion to deal with the undesirability of disposing of cases where there was real controversy between the parties in the recent case of *Stevens v. Howard D. Johnson Co.*, 4 Cir., 181 F. 2d 390, 394, where we said: 'It must not be forgotten that, in actions at law, trial by jury of disposed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits. The motion for summary judgment, authorized by rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., which in effect legalizes the 'speaking' demurrer, has an important place . . . in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. See *Westinghouse Electric Co. v. Bulldog Elec. Prod. Co.*, 4 Cir. 179 F. 2d 139, 146; *Wexley v. Maryland State Fair*, 4 Cir. 179 F. 2d 477. And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. (190 F. 2d, at 915; emphasis added.)"

The Sixth Circuit Court, in the case of *Begnaud et al. v. White* (6 Cir., 1948) 170 F. 2d 323, 327, stated:

"The authorities indicate that the trial judge should be slow in passing upon a motion for summary judgment which

would deprive a party of his right to a trial by jury where there is a reasonable indication that a material fact is in dispute."

In the case of *Carter v. Williams* (1966 C. A. 7), 361 Fed. 2d 189, 193, Chief Judge Hastings, of the Court of Appeals for the Seventh Circuit, in quoting from the case of *Moutoux v. Gulling Auto Electric, Inc.*, 7 Cir. 295 F. 2d 573, 576, held as follows:

" 'While Rule 56 does contemplate that "the allegations of fact in the pleadings may be pierced" by admissions, depositions and affidavits which show, in fact, that no genuine issues of fact exist. *Albert Dickinson Co. v. Mellos Peanut Co.*, 7 Cir. 179 F. 2d 265, 267, unless such evidentiary matters submitted in a particular case clearly show "that there was no issue of fact to be tried", the court "is not permitted to try on the affidavits submitted an issue of fact which is presented by the pleadings." *Campana Corp. v. Harrison*, 7 Cir. 135 F. 2d 334, 335-336. *If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied.* *Mitchell v. Pilgrim Holiness Church Corp.*, 7 Cir. 210 F. 2d 879, certiorari denied 347 U. S. 1013, (74 S. Ct. 867, 98 L. Ed. 1136) ...' " (Our emphasis.)

In 49 C. J. S., *Judgments*, Section 225, pages 420, 421, 422, we find the rule pertaining to summary judgments set out as follows:

"The general requirements of an affidavit filed in opposition to a motion for summary judgment are no different from those necessary in support of a summary judgment. The averment of facts which create only an issue of law, rather than an issue of fact, will not defeat the motion. To avert summary judgment in favor of plaintiff, the affidavits or other proof adduced by defendant must disclose a good defense or set out facts and circumstances sufficient to raise a triable issue of fact and to entitle defendant to defend. Affidavits of defendant opposing a motion for summary judgment which merely repeat the various denials contained in the answer, or which merely deny in general

terms plaintiff's right of action, are insufficient. His affidavits must set forth evidentiary facts sufficient to show that he has a defense to plaintiff's claim or to some part thereof. The facts must be set forth with such particularity that the court can determine whether there is a good and substantial defense, general denials or expressions of defendant's belief, or conclusions and inferences of law, and the like, being insufficient.

"The affidavits of the party opposing the motion are to be liberally construed and must be accepted as true for the purpose of the motion. Plaintiff's motion for summary judgment will not be granted where the affidavits submitted in opposition state facts which, if true, would constitute a defense, or, as the rule is sometimes expressed, in order to warrant summary judgment against defendant to satisfy the court by affidavit or other proof that there is any basis for his denial or any truth in his defense. The fact that the statements made in the opposing affidavit are made on information and belief does not of itself render the affidavit insufficient to defeat the motion. In the exercise of its sound discretion, the court may grant defendant the right to amend an affidavit of defense, which, although suggesting a triable issue, may be incomplete or technically deficient."

The plaintiff's affidavit of John Schnurlein hereinbefore set out, states that he was credit manager for the plaintiff, and as such credit manager he was in charge of collecting amounts due on account. In stating the procedure for processing a sales transaction, Mr. Schnurlein states that bulk sales are registered on an original and two copies setting out the *quantity, description,* price, total cost and the manner of payment. It should be noted that nothing in the affidavit of Mr. Schnurlein mentions whether the bulk sales were in fact weighed or whether scale stampings of weight were used.

On the other hand, the defendants' affidavit states that they are experienced poultrymen, and have been purchasing feed and grain from the plaintiff since October of 1962. They further state that because of the number of chickens they had on hand during the period in question, and because of the amount of eggs produced and recorded during such

period, it was impossible for the defendants to have received the quantity and quality of feed and grain for which payment is sought in this action on account by the plaintiff.

Plaintiff filed its bill of particulars pursuant to the defendants' motion therefor, wherein the plaintiff listed accounts receivable ledger sheets which purported to itemize ■ by date, reference number, debit or credit, the various transactions that plaintiff alleged constituted the balance due from the defendants. Also in the bill of particulars were sales tickets which purported to support the entries on the accounts receivable ledger sheets. However, upon examination of such sales tickets, we find that they only support transactions back to January of 1967, whereas the accounts receivable ledger sheets indicate transactions from October of 1962. In an action on account, proof must be made of all the individual items of the account, which in this case, would require the sales slips back to the time of the beginning of the account in 1962, in order to prove the plaintiff's claim. See, *Miller v. Schmidt et al.* (1953), 123 Ind. App. 379, 110 N. E. 2d 347.

It affirmatively appears that there is a genuine dispute in the facts as to the quantity and quality of feed and grain delivered to the defendants herein, and a possible ■ resulting set-off to the defendants. Therefore, the balance due on the account cannot be determined with accuracy without weighing the facts as presented by the pleadings and the affidavits. We are of the opinion that there is a genuine issue of fact to be determined at a trial by a court or jury.

Judgment is reversed with instructions to the trial court to reinstate this cause, and for such other proceedings as are not inconsistent with this opinion. Costs v. appellee.

Lowdermilk, P.J., Carson and Sullivan, J.J., concur.

NOTE.—Reported in 246 N. E. 2d 211.