Byron L. BRAMES and Joanne E. Brames, Appellants
(Plaintiffs Below),

v.

Chester W. CRATES, Appellee
(Defendant Below).

No. 3–477A98.

Court of Appeals of Indiana,
Third District.

Jan. 22, 1980.

David K. Hawk, Parrish, Eggers, Larson & Burt, Fort Wayne, for appellants.

Edward E. Beck, Shambaugh, Kast & Beck, Stephen J. Williams, Pichon & Williams, Fort Wayne, for appellee.

HOFFMAN, Judge.

This is an appeal from an action in which plaintiffs-appellants Byron L. Brames and Joanne E. Brames sued defendant-appellee Chester W. Crates upon an alleged promissory note. On July 9, 1975, the trial court granted plaintiffs' motion for summary judgment and awarded them $62,781.22. Thereafter defendant filed a motion to correct errors which the court granted, setting aside the entry of summary judgment. After the cause was submitted for trial, the court entered the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1. The plaintiff Byron L. Brames is a farmer, who at all times involved in this matter farmed his own farm, as well as land owned by his father and his uncle.

"2. That the defendant Chester W. Crates was the President and principal stockholder of Crateco, Inc. which operated a grain elevator at Dixon, Indiana and is in the area of the farms owned and farmed by the plaintiff Brames.

"3. That during the year 1972 the plaintiff stored 2728 bushels of soy beans at the Crateco elevator which was owned by Crateco, Inc. and managed and operated by Jon Crates.

"4. That in the year 1974 the plaintiff stored at the elevator certain crops consisting of soy beans, corn and wheat.

"5. That in addition to the grain owned by the plaintiff he also stored grain owned by Luke Brames and Paul Brames.

"6. That on every occasion of the storage of grain with Crateco the plaintiff was given a weigh ticket as a receipt, which ticket demonstrated the weight of the grain as well as the moisture content thereof.

"7. That from time to time settlement was made with the plaintiff on grain other than that involved in this matter, at which time the plaintiff surrendered his weigh bill

and received the current market price, less storage charges, drying charges and discounts for moisture.

"8. That on December 23, 1974 the plaintiff was paid the sum of $11,-800 by Crateco, Inc. for 4000 bushels of corn, but on that occasion the plaintiff did not have the weigh tickets with him and they accordingly were never marked paid.

"9. That on December 30, 1974 plaintiff was paid the sum of $15,000 by Crateco, Inc. as an advance on shelled corn, and being an advance and not a sale, at that time no weigh tickets were delivered.

"10. That on or about the 29th of January, 1975 wind caused damage to the large grain bin, at which time it was discovered that the storage bins did not contain all of the grain which should have been in storage, according to the weigh bills.

"11. That thereafter the plaintiff became worried as to the financial position of Crateco, Inc. and sought security for the grain owned by him which should have been in storage.

"12. That the plaintiff talked to the defendant in order to receive from the defendant assurances that he would be paid for the grain stored.

"13. That the plaintiff Byron and the defendant arranged to meet at the Monroeville branch of the Fort Wayne National Bank on March 7, 1975.

"14. That while at the bank an instrument in the form of a note was prepared and was given by the defendant to the plaintiff Byron as a means of securing the grain of the plaintiffs against Crateco, Inc.

"15. That the instrument represented a promise by the defendant to pay $73,224.

"16. That in figuring the amount of security to be given, a portion of the soy beans was figured at $11.50 a bushel, the balance of the soy beans at $8.00 a bushel; wheat at $4.50 a bushel; corn at $3.50 a bushel.

"17. That on March 7, 1975, the market prices for these commodities were as follows:

Corn . . . . . . . . . . . . . . $2.54 a bushel
Soy Beans . . . . . . . . . $5.06 a bushel
Wheat . . . . . . . . . . . . $3.25 a bushel

"18. That while this was the first contact by the plaintiff with either the defendant or Crateco, Inc. regarding the balance of grain in storage, it did not represent a sale or a demand for payment at the then existing market price, but the instrument was deemed sufficient to guarantee to the plaintiff the fair market value of his crops if and when he chose to dispose of the same.

"19. That at that time Crateco, Inc. should have had in storage belonging to the plaintiffs the following amounts of grain:

Corn . . . . . . . . . . . . . . 4388 bushels
Soy Beans . . . . . . . . . . 3430 bushels
Wheat . . . . . . . . . . . . . 672 bushels

"20. That the plaintiff has never made a specific demand for payment on any particular date, but has only requested payment of the note in full.

"21. That the defendant is entitled to credit for the $15,000 advance, which credit is reflected on the face of the instrument, and the defendant has paid to the plaintiff since the commencement of the lawsuit an additional sum of $17,500.

"22. That during the period in question when the plaintiff could have, or should have, made demand for settlement, the corn prices varied between $2.54 and $3.50 a bushel; soy veans [sic] between $5.06 and $8.00 a bushel; wheat between $3.25 and $4.50 a bushel.

"23. That based upon a price midway between the two figures plaintiffs would be entitled to $13,251.76 for corn; $22,397.90 for beans; and

$2,604 for wheat, or a total of $38,-253.66.

### CONCLUSIONS OF LAW

"1.     The instrument dated March 7, 1975 upon which plaintiffs' complaint is based was a security instrument given to secure the debt of a corporation, substantially owned by the defendant, to the plaintiffs and was not intended as a negotiable instrument nor was the same negotiated.

"2.     The plaintiff is entitled to recover upon said instrument the reasonable value of the debt which it was given to secure.

"3.     The plaintiff is entitled to recover the debt of Crateco, Inc. to the plaintiffs, less payments already made, or the sum of $5,753.66, plus attorney fees in the amount of $1,150, but without interest since the demand was unliquidated.

"Judgment for plaintiff for $6,903.66 and costs."

Plaintiffs assert the trial court erred in granting defendant's motion to correct errors which set aside the summary judgment entered in their favor. To fortify this assertion, plaintiffs rely on the following portion of Ind. Rules of Procedure, Trial Rule 59(E)(7):

"In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. *If corrective relief is granted, the court shall specify the general reasons therefor.*" (Emphasis supplied.)

██ Plaintiffs insist that insofar as ·a summary judgment hearing is a trial, the action of the court in setting aside the summary judgment constituted the grant of a new trial which required compliance with TR. 59(E)(7). Hence it is suggested that the court erred in failing to state its general reasons for overruling the summary judgment entry. This contention must be rejected since a summary judgment proceeding is not a trial as its purpose is to avoid a trial where there is no issue as to a material fact. *Deckard v. Mathers* (1972), 152 Ind.App. 440, 284 N.E.2d 92; *Walsh v. Farm Bureau Co-op.* (1969), 146 Ind.App. 42, 252 N.E.2d 609; *Verplank v. Commercial Bank* (1969), 145 Ind.App. 324, 251 N.E.2d 52; *Babchuk v. Heinold Elevator Co., Inc.* (1969), 144 Ind.App. 328, 246 N.E.2d 211. In contrast to a trial where the purpose is to try the facts and determine the preponderance of the evidence, a summary judgment proceeding is a procedure for applying the law to the facts where no factual controversy exists. *Amer. States Ins. Co. v. State ex rel. Jennings* (1972), 152 Ind.App. 422, 284 N.E.2d 873. There was no error here.

Plaintiffs also contend they were entitled to recover as a matter of law upon the alleged promissory note absent a finding of a defense thereto. They argue that all facts not embraced within the special findings are deemed as not proven by the party having the burden of proof on the issue. Thus plaintiffs reason that insofar as the trial court did not make specific findings on the defenses of lack of delivery, failure of consideration or mutual mistake, said omissions demonstrate as a matter of law that defendant failed to sustain his burden of proof.

Under pre-Ind. Rules of Procedure, Trial Rule 52 cases, there was a presumption that all facts not contained in requested special findings of fact were regarded as not proved by the party having the burden of proof. *Patterson v. Gary Land Co.* (1934), 101 Ind.App. 644, 188 N.E. 685; *Kerfoot v. Kessener* (1949), 227 Ind. 58, 84 N.E.2d 190. However, TR. 52(D) now provides that "[t]he court's failure to find upon a material issue upon which a finding of fact is required by this subdivision or this rule shall not be resolved by any presumption

and may be challenged under subdivision (B) of this rule; . . ." *See also Daly v. Nau* (1975), Ind.App., 339 N.E.2d 71. Since plaintiffs have charged ·that defendant failed to sustain his burden of proof, the inquiry then turns to whether there was sufficient evidence to support the trial court's determination that the instrument sued upon was intended as a security instrument and not as a negotiable instrument.

Viewing the evidence in a light most favorable to the judgment reveals that on January 29, 1975 a large storage bin at the Crateco facilities collapsed at which time it was discovered that none of the bins contained an amount equal to the grain which had been stored there. As a result plaintiff Byron Brames became concerned about the financial condition of Crateco and according to the defendant's testimony sought a guarantee that he would be paid for his grain which should have been in storage. Moreover, plaintiff told defendant's son that he either wanted his money or something backing it up. On March 7, 1975 plaintiff and defendant met at a bank where the instrument in question was prepared and given to the plaintiff.

▇ In arriving at the amount of the instrument, defendant relied on figures prepared in a memorandum by his son, who was in charge of Crateco's records. The son testified that these figures reflected the gross weights of grain which had been delivered to Crateco by the plaintiff. These quantities, however, greatly exceeded those actually credited to the plaintiff since they included grain owned by plaintiff's father and uncle. Plaintiff testified that he owned only a one-half interest in these commodities. Furthermore, these quantities were not reduced by customary adjustments to indicate moisture content and dry weight equivalents. Neither were offsetting charges due Crateco for drying and storage fees taken into account. Addition-

ally, the prices assigned to the quantities of grain substantially exceeded the market prices. Neither party was aware of the market prices for these commodities at the time of the meeting. This evidence was sufficient to show that the instrument sued upon was intended as a guarantee to the plaintiff that he would receive the fair market value of his grain if and when he chose to dispose of the same and did not represent a sale or a demand for payment at the then existing market price.

Plaintiffs next contend the trial court erred when it considered extrinsic evidence of the parties' intent regarding the character of the instrument in violation of the parol evidence rule. They argue that parol evidence is inadmissible to contradict an otherwise unambiguous negotiable instrument.

▇ Assuming that the instrument was a negotiable instrument, plaintiffs do not claim the status of a holder in due course. As to rights of one who is not a holder in due course, IC 1971, 26–1–3–306 (Burns Code Ed.) provides in part:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; . . ."[1]

Therefore plaintiffs, who were not holders in due course, took the instrument subject to the defense that delivery was conditional or for a special purpose only. Delivery of a negotiable instrument upon a condition or for a special purpose only may be shown by parol evidence as between the immediate parties to it. *Chera v. Shores* (1976) 145 N.J.Super. 19, 366 A.2d 994; *McPherson v.*

---

1. The foregoing provisions of the Indiana Uniform Commercial Code are merely a summarization of certain basic contract principles. *Gonderman v. State Exchange Bank* (1975), 166

Ind.App. 181, 334 N.E.2d 724. Therefore the rules of evidence applicable to a simple contract control in determining the evidence which may be introduced to establish these defenses.

*Longview United Pentecostal Church* (1976), Tex.Civ.App., 540 S.W.2d 424. Moreover, parol evidence is admissible to show that a promissory note was delivered merely as security for the performance of a collateral oral agreement. *Silva v. Gordo* (1924) 65 Cal.App. 486, 224 P. 757; *Oakland Cemetery Ass'n of Lyons v. Lakins* (1904), 126 Iowa 121, 101 N.W. 778; *Howard v. Stratton* (1884) 64 Cal. 487, 2 P. 263. In the case at bar, parol evidence was admissible to show that the promissory note was given to secure the performance of the storage contract between Crateco and Brames.

Furthermore, the parol evidence rule does not apply to a situation where, by reason of mutual mistake of fact, instruments have been so framed as not to express the true agreement of the parties. *Hollars v. Stephenson* (1951), 121 Ind.App. 410, 99 N.E.2d 258. In *Low v. Freeman* (1889), 117 Ind. 341, 20 N.E. 242, a promissory note had been given in satisfaction of an account which had arisen from various transactions between the parties. During the trial of the payee's action to enforce collection of the note, the maker was excluded from introducing a memorandum which had been prepared contemporaneously with the making of the note. This memorandum contained computations which were allegedly relied upon in determining the principal amount of the note. However, these computations failed to include certain setoffs due to the maker. Upon appeal it was held that the trial court erred in excluding the memorandum. In the instant suit, extrinsic evidence relating to the discrepancies in quantities, disparate values, lack of moisture discounts and omissions of setoffs due to Crateco was admissible to show a mutual mistake in fact in computing the principal amount of the note.

Lastly, plaintiffs allege the trial court erred in awarding them only $1,150 in attorney fees. The reasonableness of attorney fees is a matter regarding which the judge, being a lawyer, may take judicial notice. Consequently, his determination is reviewable only for a clear abuse of discretion. *McDaniel v. McDaniel* (1964), 245 Ind.

551, 201 N.E.2d 215. Plaintiffs have not demonstrated any abuse thereof. The fact that a different trial judge might have awarded a larger amount is of no consequence.

No reversible error having been shown, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., concurs with opinion.

STATON, Judge, concurring.

I have great difficulty in characterizing the instrument in question as an "alleged promissory note." It is, in fact, a negotiable instrument in the form of a promissory note. IC 1971, 26–1–3–104 provides:

"(1) Any writing to be a negotiable instrument within this article [chapter] must

"(a) be *signed by the maker* or drawer; and

"(b) *contain an unconditional promise* or order *to pay a sum certain in money* and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article [chapter]; and

"(c) *be payable on demand* or at a definite time; and

"(d) *be payable to order* or to bearer.

"(2) A writing which complies with the requirements of this section is

\*    \*    \*    \*    \*    \*

"(d) a '*note*' if it is a *promise* other than a certificate of deposit." (Emphasis added.).

There can be little doubt that it is a written instrument, signed by Crates in the capacity of "maker," containing an unconditional promise to pay, upon demand, a sum certain in money to the order of Brames. The fact that the note describes some property as security for the payment of the instrument does not make it conditional, thereby affecting its negotiability. IC 1971, 26–1–3–105(1)(e). Brames, unquestionably, is a "holder" as defined by IC 1971, 26–1–1–201(20). As such, he should be able to re-

cover on the note, barring the establishment of any defenses to the note by Crates. IC 1971, 26–1–3–307(2).

As Brames did not attempt holder in due course status, he took the instrument subject to all defenses available to Crates in an action on a simple contract. IC 1971, 26–1–3–306. The defenses argued by Crates included failure or want of consideration, lack of delivery and mutual mistake.

The want or failure of consideration defense is untenable in this situation as the promissory note was given as security for the grain which Brames had previously stored in Crates' elevator. No consideration is necessary where an instrument is given as security for an antecedent obligation of any kind. IC 1971, 26–1–3–408.

Concerning the defense of lack of delivery, IC 1971, 26–1–1–201(14) defines "delivery" with respect to instruments as the "voluntary transfer of possession." The transfer of an instrument vests the rights possessed by the transferor in the person of the transferee. IC 1971, 26–1–3–201. Negotiation occurs when the transferee becomes a "holder" through the transfer of an instrument. If an instrument is payable to order, it is negotiated by delivery with any necessary indorsement. IC 1971, 26–1–3–202(1). The instrument in question stated that the maker promised to pay to the order of Byron L. Brames and Joanne E. Brames, $73,224.00 (less $15,000.00 advance); it was signed by Crates, as maker. This note, made payable to the order of Brames, was prepared at the bank by both men and given by the note's maker, Crates, to Brames. Brames subsequently became the "holder" of the note. The Indiana Comment to IC 1971, 26–1–3–202 explains that the definition of "holder" includes the payee of "payable to order" paper so that "it is now certain that a payee of such paper may take by negotiation." Clearly, Crates effectively delivered the note to Brames.

As one who is not a holder in due course, Brames' recovery on the note is subject to the contract defense of mutual mistake. Here, as the majority noted, the parol evidence rule will not operate to bar extrinsic evidence as to the parties' intent and true agreement. *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. and Eq. Corp.* (1974), 160 Ind.App. 26, 309 N.E.2d 464. The note must fail as it was based upon inaccurate data, unknown to both parties at the time of writing. The mistake made went to the essence of the contract. Accordingly, the court's remedy of allowing Brames to recover the reasonable value of the debt, which the note was given to secure, was, in this situation, appropriate.