**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John M. LaROSA and Esther C. LaRosa, et al., Defendants-Appellants.**

**No. 84–1585.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1985.

Decided June 20, 1985.

---

Bruce M. Pennamped, Forbes, Kias & Pennamped, P.C., Indianapolis, Ind., for defendants-appellants.

Robert L. Klarquist, Dept. of Justice, Land & Natural Resources Div., Appellate Sec., Washington, D.C., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The United States brought this action in the district court seeking to reform a deed that had conveyed property to the government in order to make the deed conform to the actual common boundary line plotted out on the ground. The district court, pursuant to rule 54(b) of the Federal Rules of Civil Procedure, found that there was no just cause for delay in entering judgment and directed entry of judgment for the United States. We affirm.

### I.

In the mid-1950's, the United States Army Corps of Engineers ("Army Corps") began to plan the construction of the Cecil M. Hardin Reservoir on a portion of land acquired by the United States in Parke County, Indiana. Since the reservoir was to aid in flood control and since the water level in the lake near the dam was expected to fluctuate, the Army Corps had to coordinate the amount of additional land that it would have to acquire to the projected highest water level surrounding the lake, or 678 feet above mean sea level. In 1957, the Army Corps contracted with the Michael Baker, Jr. surveying firm to determine the contour elevations enclosing the planned reservoir and the amount of land that would have to be purchased from the nearby landowners in order to complete the project. After wooden stakes and various colors of paint were used to plot the boundaries, one of the surveyors, Roy Taylor, sent his book of field notes to the surveying firm's office for conversion into formal written deeds. The surveying firm also drew up segment maps based on the plotted boundary lines in order to show the relationship between the survey line and the privately-held parcels of land. The Army Corps proceeded to negotiate with landowners to acquire the requisite land.

As a result of an error in converting Taylor's field notes into a deed description for the property belonging to one of the landowners, Ella Burk, the deed that was drafted by the surveying firm depicted one of the boundary lines as being north of a section line rather than south as the markers indicated. On February 28, 1959, Ella Burk executed the deed in favor of the United States. In July 1959, Burk conveyed all of her remaining property, which she had not previously sold to the United States and which abutted the parcel acquired by the United States, to Thomas Gates and two of his partners. Gates hired a surveyor, William Crowley, in order to begin surveying for the development of a subdivision. When the surveyor was unable to locate a section corner of Gates's parcel using the written deed, he decided to prepare a subdivision map using the property's red-colored boundary line as the western boundary and recorded this map in the recorder of deeds office.

In 1965, the United States had the Baker surveying firm place iron boundary marking posts and concrete boundary monuments along the boundary line marked on the property. In 1974, Gates began negotiating with the defendants LaRosas for the

sale of the property. Gates gave the LaRosas a copy of Crowley's subdivision map showing boundary lines corresponding to the actual markers on the property. Prior to closing the deal in August 1974, the LaRosas hired a surveyor, Alan Stanley, to conduct a survey. When Stanley was unable to follow the written deed calls on the property, he decided to extend one of the boundary lines in the deed, thereby giving the LaRosas more property. In 1976, after the LaRosas had purchased the property, Stanley was preparing a plat map for the LaRosas for use in establishing a subdivision and found that the plat map seemed to match the government's boundary markers placed on the land rather than his 1974 survey with the line extension. The LaRosas rejected this plat map and ordered Stanley to redraw the map in conformance with his 1974 survey.

In July 1979, the United States brought this suit against the LaRosas and the purchasers of subdivided lots from the LaRosas, seeking a decree to quiet title to the disputed land, a decree to reform the Burk deed to match the actual markers located on the land, and an order to prevent the LaRosas from trespassing on the land. The LaRosas claimed that they were bona fide purchasers and that the United States should be estopped from asserting the deed defects against them. Following a trial, the district court decided in favor of the United States, holding that the deed was ambiguous when plotted out on the actual land and that, therefore, the parties could introduce parol evidence to reveal their intent. The court proceeded to reform the deed to correspond to the parties' mutual intent and found that the LaRosas were not bona fide purchasers and that the United States should not be estopped from seeking reformation of the deed. On appeal, the LaRosas contend that the district court erred in admitting parol evidence, in concluding that mutual mistake had oc-

curred, and in finding that the LaRosas were not bona fide purchasers and that the United States was not estopped from asserting its claim. We will address these issues in turn below.

## II.

The defendants argue that the district court abused its discretion in admitting and using parol evidence to aid in ascertaining the intent of the parties to the deed since the legal description in the deed was clear, unambiguous, and sufficient on its face. The courts in Indiana [1] have held that parol evidence can be admitted in order to explain a mistake of fact in a deed and thereby to express the true agreement of the parties. *See, e.g., McCasland v. Aetna Life Insurance Co.,* 108 Ind. 130, 131, 9 N.E. 119, 119 (1886); *Hollars v. Stephenson,* 121 Ind.App. 410, 414–17, 99 N.E.2d 258, 260–62 (1951); *Wieneke v. Deputy,* 31 Ind.App. 621, 624, 68 N.E. 921, 922 (1903). A mistake of fact occurs when there is a discrepancy between what the parties to a deed intend to convey and what is actually conveyed, as described in the deed. *Baker v. Pyatt,* 108 Ind. 61, 66–69, 9 N.E. 112, 115–16 (1886). Thus, in cases where the calls in a deed are conflicting or ambiguous or when an effort to apply the description to the ground gives rise to an ambiguity, parol evidence is admissible in order to show where the actual survey or boundary line has been plotted on the ground. 6 Thompson, *The Law of Real Property* 469–71, 570 (J. Grimes ed. 1962).

In the present case, we affirm the decision of the district court in admitting parol evidence and in reforming the Burk deed to correspond to the boundary markers placed on the disputed parcel of land. Since the written calls in the deed did not form a bounded parcel of land or failed to

---

**1.** The district court correctly referred to Indiana law in resolving this dispute since, in most circumstances, property ownership is not governed by a general federal law, but rather by the property law of the state in which the property

is located. *See Oregon ex rel. State Land Bd. v. Corvallis Sand and Gravel Co.,* 429 U.S. 363, 378–79, 97 S.Ct. 582, 590–91, 50 L.Ed.2d 550 (1977).

close when traced out on the land,[2] it was proper for the district court to allow the admission of parol evidence to clarify the ambiguity in the deed. The parol evidence revealed that the United States had had the land surveyed in 1957 and had placed wooden stakes and markers around the property in order to plot the boundaries. The United States also had various segment maps drawn up at this time, which were based on the plotted boundary lines and which showed the relationship among the parcels of land. Based on this parol evidence, it is clear that there was a mutual mistake on the part of both the United States and Burk[3] as to the parcel of land that was described in the deed and the parcel of land that should have been described based on the boundary markers.

■ Once a court determines that a mutual mistake has occurred, it will permit reformation of a deed to correspond with the parties' intent provided that the rights of any bona fide purchasers have not intervened. *Kroeger v. Kastner*, 212 Ind. 649, 652, 10 N.E.2d 902, 903 (1937); *Baker v. Pyatt*, 108 Ind. at 70, 9 N.E. at 117. A bona fide or innocent purchaser has been defined by the Supreme Court as one who purchases a title for valuable consideration and without notice of any defect in or adverse claim to the title. *Boon v. Chiles*, 35 U.S. (10 Pet.) 177, 210, 9 L.Ed. 388 (1836). The courts have held that if a purchaser has actual notice of particular facts which are sufficient to put a reasonably prudent person on duty of inquiry, then the purchaser will be charged with the knowledge that such inquiry, reasonably prosecuted,

would have revealed. *See, e.g., Mishawaka, St. Joseph Loan and Trust Co. v. Neu*, 209 Ind. 433, 441–45, 196 N.E. 85, 89–90 (1935); *Huffman v. Foreman*, 163 Ind. App. 263, 273, 323 N.E.2d 651, 657 (1975). Thus, a court will not regard a person as a bona fide purchaser if he fails to examine the land that he intends to buy prior to the purchase or if he fails to inquire about the rights of a party in possession. *Mishawaka v. Neu*, 209 Ind. at 443, 196 N.E. at 90.

■ Even though we find that there was a mutual mistake by the original parties to the deed, we must determine whether the LaRosas were bona fide purchasers so as to preclude the district court from ordering reformation of the deed. We conclude that the LaRosas were not bona fide purchasers and thus that the district court properly ordered reformation of the deed. Before the LaRosas purchased the property from Gates, they never inspected the property and thus did not personally discover the boundary markers plotted out on the property. In addition, when Gates purchased the property from Burk, he had the property surveyed. This surveyor was unable to follow the calls in the deed, so he proceeded to prepare a subdivision map for Gates relying on the boundary markers actually located on the property rather than on the deed itself. Gates had this subdivision map recorded in the recorder of deeds office and also furnished a copy to the LaRosas prior to their purchase of the property. In sum, the LaRosas had actual notice of particular facts which should have put a reasonably prudent person on a duty of inquiry. If the

---

2. Counsel for the LaRosas claimed in oral argument before this court that the Burk deed did close when plotted out on the property. However, the Burk deed could only be said to close because the LaRosas' surveyor, Alan Stanley, extended one of the boundary lines as described in the deed when he was preparing his 1974 survey, thereby permitting the deed calls to close and giving the LaRosas more property than the actual boundary markers on the land indicated that they were entitled to receive.

3. The LaRosas argue that the intent of Ella Burk cannot be ascertained since she died before this property dispute arose. However, the fact that the grantor has died has not prevented courts

from reforming deeds where the parties' intent can be ascertained from the circumstances surrounding the conveyance. *See, e.g., Baker v. Pyatt*, 108 Ind. 61, 66–71, 9 N.E. 112, 115–17 (1886). In the present case, the Army Corps placed the actual boundary markers on the land before the surveyor's field notes were even converted into the formal deed. Furthermore, it was the Army Corps's practice to show the landowner segment maps of the piece of property that the government desired to acquire. These segment maps were drawn up by surveyors who relied on the actual boundary markers as guidelines.

LaRosas had inspected the property or looked at the subdivision map, they would have discovered the possible boundary dispute and thus should now be charged with the knowledge that such an investigation by them would have revealed.

 The LaRosas finally argue that the United States must be estopped from denying the validity of the Burk deed and from taking advantage of subsequently discovered errors in the survey. The LaRosas cite as precedent several cases in which the Supreme Court held that the United States was bound by its original land surveys that granted public land to settlers despite any errors in the surveys that were subsequently discovered. *See, e.g., Lindsey v. Hawes,* 67 U.S. (2 Black) 554, 17 L.Ed. 265 (1863). In *Lindsey,* the Court reasoned that the United States should be bound by its original survey because the survey had been approved, filed in the proper office, and recognized as valid by the government and because the Lindseys had relied on it when purchasing their land. *Id.* at 560. In the present case, however, the United States is not denying the validity of its original survey, but rather has consistently maintained that that survey and the boundary markers placed on the property according to that survey should be honored. Furthermore, the LaRosas did not rely on the original Burk deed in beginning their subdivision development, but rather on their surveyor's plat map, which had been redrawn by the surveyor at the LaRosas' direction in order to conform to the 1974 survey completed at the time of the LaRosas' purchase of the parcel of land. This 1974 survey had given more land to the LaRosas because the surveyor had decided to extend one of the boundary lines to make the deed close. Thus, even the LaRosas did not rely on the original deed in pursuing their subdivision development. The courts have held that the doctrine of estoppel shall have no application where the facts are equally known to both parties and where the party claiming estoppel has not been induced to rely and has not relied on the representations contained in a deed. *Ross v. Banta,* 140 Ind. 120, 150, 39 N.E. 732, 734 (1895);

*Schipper v. St. Palais,* 37 Ind. 505, 511 (1871). *See also* 5 Thompson, *The Law of Real Property* 510-11, 524 (J. Grimes ed. 1979). In sum, we hold that the United States cannot be estopped from seeking reformation of the deed.

In conclusion, we affirm the district court's decision for the United States and its order requesting the United States to prepare a deed to conform to the court's findings.