**Manis BOLEN, Appellant (Defendant Below),**

v.

**MID–CONTINENT REFRIGERATOR CO., Appellee (Plaintiff Below).**

No. 3–1179A306.

Court of Appeals of Indiana,
Fourth District.

Oct. 22, 1980.

Rehearing Denied Dec. 4, 1980.

---

Wilson E. Shoup, Angola, for appellant.

William B. Bryan, Bryan & Hornbacher, Angola, for appellee.

YOUNG, Presiding Judge.

Plaintiff–appellee Mid–Continent Refrigerator Co. recovered a $1972.88 deficiency judgment from defendant–appellant Manis Bolen after repossession and public sale of a display freezer sold to Bolen. Bolen appeals alleging the evidence was insufficient in several aspects to support the judgment, that the trial court erred when it refused to grant summary judgment for Bolen, that the trial court erred when it failed to order Mid–Continent to answer several interrogatories, and that the trial court erred when it did not order facts to be taken as established. We affirm.

▇▇▇ Where sufficiency of evidence is raised as an issue on appeal, our function is to determine if there is substantial evidence of probative value to support the judgment below. We examine the evidence support-

▇▇▇

ing the judgment of the trial court together with all reasonable inferences therefrom, neither weighing evidence nor resolving credibility. *Sandock v. F. D. Borkholder Co.*, (1979) Ind.App., 396 N.E.2d 955; *Grad v. Cross*, (1979) Ind.App., 395 N.E.2d 870.

▇▇▇ Bolen's first allegation of insufficient evidence is that Mid–Continent, as a foreign corporation, presented no evidence of compliance with the requirement of obtaining a certificate of admission before bringing this action in a state court of Indiana. Any foreign corporation must procure a certificate of admission before transacting business in Indiana. Ind.Code 23–1–11–1. A foreign corporation transacting business in Indiana without procuring such a certificate may not maintain any action arising out of contract or tort in the courts of this state. Ind.Code 23–1–11–14. However, the person asserting such lack of capacity to maintain an action has the burden of proof. Ind.Rules of Procedure, Trial Rule 9(A). *Domain Industries, Inc. v. Universal Pool Supply, Inc.*, (1980) Ind.App., 403 N.E.2d 889; *Clark Advertising Agency, Inc. v. Avco Broadcasting Corp.*, (1978) Ind. App., 383 N.E.2d 353. An allegation by a party having the burden of proof on an issue that the finding of the trial court is not supported by sufficient evidence raises nothing for review. *Dagley v. Incorporated Town of Fairview Park*, (1978) Ind.App., 371 N.E.2d 1338. As Bolen argues there was insufficient evidence of capacity to bring suit, he has presented nothing for review.

▇▇▇ Bolen's second allegation of insufficient evidence charges there is no proof of entry into the lease by the parties. We note first that Mid–Continent included with its complaint the instrument upon which this suit is based. TR. 9.2(A). When this is done, execution of such instrument is deemed established and shall be deemed admitted into evidence in the action without proving its execution, unless execution is denied under oath in the responsive pleading or affidavit filed therewith. TR. 9.2(B). The Civil Code Study Commission

Comments to Trial Rule 9.2(B) state that "there should be no need for the pleader claiming rights upon the instrument to formally offer the instrument into evidence unless its execution is denied." 1 W. Harvey, Indiana Practice 569 (West 1969). The Commission further comments that if the execution is denied under oath, only after evidence is introduced reasonably establishing lack of execution must the pleader offer the instrument into evidence. See also TR. 9.2(D). Bolen does not argue and the record does not show that a denial of execution under oath was in the responsive pleading or that an affidavit denying execution was filed therewith. No evidence of lack of execution was offered by Bolen. In light of this, the trial court could properly have presumed execution. TR. 9.2(D). *See Moehlenkamp v. Shatz,* (1979) Ind.App., 396 N.E.2d 433. Therefore, there was sufficient evidence of execution of the lease and pursuant to TR. 9.2 the instrument was in evidence.

■ Bolen's third allegation of insufficient evidence is there was no evidence presented at trial of the execution of a financing statement. In making this argument, Bolen necessarily argues that the lease was a security agreement.[1] Where an argeement provides that upon compliance with the terms of the lease the lessee shall have the option to become the owner for nominal consideration, the lease is one intended for security. Ind.Code 26–1–1–201(37). This is to be determined from the facts of a given case. *Id.* Testimony was given by plaintiff's sales representative that at the end of the lease the purchaser could receive title to the freezer for $1.00 and sales tax. The shipping order attached to the amended complaint also reflects the option to obtain title. The facts of this case clearly indicate that the lease was intended as security. A security agreement is effective according to its terms between the parties. Ind.Code 26–1–9–201. The executed lease–security agreement is binding between the parties regardless of the per-

fection of a financing statement. *Beneficial Finance Co. of Indianapolis v. Nelson,* (1958) 129 Ind.App. 23, 153 N.E.2d 613. We held above that the court could presume execution of the lease. Therefore, the asserted lack of proof of an executed financing statement avails Bolen to nothing. This is not a case of competing security interests.

■ Bolen's next allegation is that there was insufficient evidence that any rights, specifically the right to repossess, accrued to Mid–Continent upon default, or that Mid–Continent was required to purchase insurance because of Bolen's failure to do so. The remedies of Ind.Code 26–1–9–501 et seq. operate only after default. Default must be and is defined by the agreement. As to default, rights upon default and repossession upon default, paragraph 14 of the lease provides that upon the failure of the lessee to pay the rent due within 10 days after it is due Mid–Continent can take possession and pursue any other remedy at law or in equity. Thus the agreement specifically provides that Mid–Continent may repossess. In his answer Bolen admits that he did not pay the January 25, 1977 rental, but denies any rights accrued Mid–Continent. Having found the lease agreement was deemed admitted in evidence, there is sufficient basis in the record for the trial court to determine the events defined as default, the existence of those events and the remedies and rights flowing to Mid–Continent under the agreement and under the U.C.C. Also, the agreement, in paragraph 8, provides that lessee Bolen is required to maintain fire insurance on the freezer. In addition to defining default, paragraph 14 provides that upon failure of the lessee to perform any provision of the lease required to be performed by lessee, the lessor may pursue any remedies at law or equity. Bolen admittedly failed to procure insurance. While it might be reasonable and proper for Mid–Continent to provide insurance on an item in which it has a security interest, we find no evidence of the cost of the insurance in the record. Mid–

1. That it is a security agreement will also be important later as the lessor–seller must pursue his remedies under Ind.Code 26–1–9–501 et seq. on default under the lease.

Continent avers in its amended complaint that the cost of the insurance was $210.00 of which Bolen paid $85.00 leaving a balance due of $125.00. Bolen denied such figures in his answer thereby leaving such amount in issue to be later resolved by the trier of fact. Appellee Mid–Continent does not direct our attention to the location of any such evidence in the record, nor do we discover any in our perusal of the record. Without evidence in the record to support an award for insurance, it would be improper to make such an award. However, the judgment is in a lump sum. We are unable to determine and Bolen has not demonstrated that insurance costs were in fact awarded.

Bolen next argues there is insufficient evidence of whether repossession was authorized by agreement or law. As we have stated above both the agreement in paragraph 14(c) and Ind.Code 26–1–9–503 permit the secured party to take possession upon default. Mid–Continent was authorized to repossess upon default.

 Next appellant alleges that there was insufficient evidence of compliance with the statutory requirements for sale by Mid–Continent of the collateral and that there was no evidence of the fact of indebtedness of Bolen to Mid–Continent. Bolen begins this argument by setting out the averments of the amended complaint and the denials thereof in his answer. He then argues there is no evidence "that the property was disposed of at a public sale or that the goods were of a type customarily sold in a recognized market or the subject of widely distributed standard price quotations as required by statute in order to make it lawful for Mid–Continent to buy the property." The requirements are set forth in Ind.Code 26–1–9–504(3):

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

First, there is ample evidence in the admissions by Bolen on Mid–Continent's request which would allow the trial court to reasonably infer that disposition was by public sale.[2] Generally a public sale requires notice or an invitation to the public to bid permits the public to engage in competitive bidding, and is conducted at a public place or a place to which the public has access. 69 Am.Jur.2d *Secured Transactions* § 608 (1973); Annot., 4 A.L.R.2d 575 (1949). Here, notice to bid at a public sale was published in two local newspapers; competitive bidding was advertised (terms: sale to the highest bidder); and the public had access to the place of sale, the attorneys' offices. Bolen defaulted in early 1977 and the freezer was repossessed and sold in September of 1977. Notice of the sale was given to Bolen's attorney, who had already entered an appearance.[3] Mid–Continent, as

---

**2.** Bolen argues in his reply brief that the record does not demonstrate the service of Mid–Continent's Request for Admissions or that he did not respond. Mid–Continent's Request includes a certificate of service and a file stamp. There is no response of record.

**3.** The reason counsel had already appeared for Bolen is because Mid–Continent filed suit based

the only bidder appearing at the sale, purchased the freezer. "The secured party may buy at any public sale." Ind.Code 26–1–9–504(3). Bolen's argument that Mid–Continent could not buy at the public sale because the collateral was not of a type customarily sold in a recognized market or the subject of widely distributed standard price quotations is misplaced. Such restrictions apply only to a private sale. Ind.Code 26–1–9–504(3). The only requirement of the statute we have not yet found to be met is that of the commercial reasonableness of the terms of the sale. This requirement has also been met. The extent of Bolen's argument here, other than the generalization that there is no evidence that the statutory requirements have been met, merely summarizes the averments of the complaint and denials in his answer as to notification and the commercial reasonableness of the sale price. We have already held the notification of sale complied with the statute. We also hold there is sufficient evidence for the trial court to find that the amount received for the sale of the collateral was commercially reasonable. *Schabler v. Indianapolis Morris Plan Corp.*, (1968) 142 Ind.App. 319, 234 N.E.2d 655; *see Hall v. Owen County State Bank*, (1977) Ind.App., 370 N.E.2d 918. The requirements of the statute were met in our case as we discussed above. When the sale is conducted *according to the requirements of the statute*, the amount received at the sale of collateral is evidence of the true value in an action to recover a deficiency. *Schabler v. Indianapolis Morris Plan Corp., supra*; see also *Universal C. I. T. Credit Corp. v. Rone*, (1970) 248 Ark. 665, 669, 453 S.W.2d 37, 39–40 (citing *Schabler, supra*.) Here, there is evidence then of the true value of the collateral sufficient to carry the secured party–Mid–Continent's burden of showing the terms and price were prima facie reasonable. Bolen was free to present evidence tending to show unreasonableness for the trial court to consider. He did not.

Also within this same allegation Bolen argues there is insufficient evidence of his indebtedness to Mid-Continent. We have already held the lease agreement was in evidence and the court had before it the admitted facts sufficient to show default. There was sufficient evidence to enable the court to figure the amounts due under the lease together with other admitted credits due Bolen and determine that a deficiency under the lease agreement was owed to Mid–Continent by Bolen.[4]

Next, Bolen alleges there was no evidence that Mid–Continent accepted the terms of the lease in writing pursuant to the agreement. While this may be true, performance under the agreement was sufficient basis for the court to find acceptance. 17 Am.Jur.2d *Contracts* § 45 (1964). Both parties having performed under the contract for some time, reversal because of the lack of evidence of a written acceptance would not be proper.

Bolen's final two allegations regarding the insufficiency of the evidence to support the judgment of the trial court are repetitious and summaries of his prior seven allegations. We will not discuss these again, but refer Bolen to their disposition above.

As his next allegation, Bolen asserts that the trial court erred by not granting his Motion for Summary Judgment. Bolen states in his brief that:

The motion was supported by an affidavit, made on personal knowledge, which made it clear that no representative of Mid-Continent explained to Bolen the clauses in the printed forms, which were the basis of Mid–Continent's suit, in such a manner from which Bolen could understand the legal significance of such clauses; no representative of Mid-Continent advised Bolen that he should consult legal counsel before signing the papers.

upon the lease prior to repossession and sale. An appearance and answer had been filed in response to this complaint. After filing that complaint, Mid–Continent repossessed and sold the freezer. Then, an amended complaint was filed seeking the deficiency.

4. Bolen raises no question or makes no argument concerning the amount owed.

The legal significance of Bolen's signature upon the papers was not made to appear anything more than a mere formality. Bolen is unable to read and he can write little more than his name. At the time of the transaction he was not in a position to shop around for a better deal or better terms and he did not fully understand the words of the printed forms.

Mid–Continent did not respond to the motion and supporting affidavit, except possibly in the hearing on the motion which is not in the record. Bolen argues that by Mid–Continent's failure to respond, it has in effect admitted Bolen's entire defense and he was entitled to summary judgment as a matter of law. We disagree. First, summary judgment will not be granted as a matter of course because the opposing party fails to offer opposing affidavits. TR. 56(C). Second, summary judgment is not proper even where facts are not in dispute if different conclusions may be drawn from such facts. *Babchuk v. Heinold Elevator Co.,* (1969) 144 Ind.App. 328, 246 N.E.2d 211. Although Bolen has shown some facts similar to those in *Weaver v. American Oil Co.,* (1971) 257 Ind. 458, 276 N.E.2d 144, the thrust of his defense, the trial court is not required to reach the same conclusions. The circumstances and other facts are sufficiently dissimilar. The trial court did not err in failing to grant Bolen's Motion for Summary Judgment.

█ Next, Bolen alleges the court committed error when it failed to order Mid–

Continent to answer five interrogatories. Mid–Continent had objected on the grounds that the interrogatories were not relevant or asked for conclusions of law. An interrogatory is not objectionable merely because it calls for an opinion or legal conclusion. TR. 33(B); *Indiana & Michigan Electric Co. v. Whitley County REMC,* (1974) 161 Ind.App. 492, 316 N.E.2d 584. On the one hand we find no motion for an order compelling an answer under Rule 37(A) with respect to any of these objections. TR. 33(A). However the record does show that a hearing was held wherein the court instructed Mid–Continent to answer some interrogatories to which it had objected, but found that it was not directed to answer others, those here in question. We will assume the hearing was at the bidding of Bolen under Rule 37 since the record does show a hearing was held regarding the interrogatories.

█ We note that four interrogatories, numbers 13, 15, 16 and 19, in question here, were answerable by a yes or no response. We also find alternative discovery methods in the record in the form of Bolen's Request for Admissions. Mid–Continent did respond to the Request for Admissions. The indistinguishable nature of the information sought and received by the response to the request for admissions from that of the interrogatories renders harmless any error in failure of the trial court to direct an answer to those four interrogatories.[5] TR.

---

**5.** We set out here the interrogatories objected to by Mid–Continent immediately followed by the corresponding Request for Admission of Bolen denied by Mid–Continent.

Interrogatory: 13. Were the clauses in the printed form explained to the defendant in such a manner from which he could understand their legal significance?

Request for Admission: 12. No representative of the plaintiff explained to defendant the clauses in printed form in such a manner from which defendant could understand their legal significance.

Interrogatory: 15. Was the significance of defendant's signature upon the papers made to appear anything

more than a mere formality? If so, how, by whom, and in what manner?

Request for Admission: 14. The significance of defendant's signature upon the papers was not made to appear anything more than a mere formality.

Interrogatory: 16. Was there a patently obvious disparity in the bargaining powers of the parties?

Request for Admission: 16. There was at the time of the transaction a patently obvious disparity in the bargaining powers of the parties.

Interrogatory: 19. Was there a real and voluntary meeting of the minds?

Request for Admission: 22. There was not a real and voluntary meeting of the minds.

61. He did in fact have discovery on those matters. Bolen argues the remaining interrogatory, which asked for the amount of money spent annually by Mid–Continent for litigation and other legal services, would have shown the disproportionate resources available to the parties. Other interrogatories requested the total amount of Mid–Continent's consolidated assets and its income and earnings for its last completed fiscal year. Responses were provided to these interrogatories. This information would have similar impact in showing the disproportionate resources available to the parties sufficient to render harmless any error in the refusal to direct an answer to the interrogatory in issue here. TR. 61.

 Finally, Bolen argues that the trial court erred in failing to recognize by court order the binding effect of facts set out in a Motion That Facts Be Taken As Established. For those paragraphs of the Motion which were admitted by Mid–Continent in Bolen's Request for Admissions, no order was required. Any matter admitted under a Rule 36 request is conclusively established. TR. 36(B). There was no need for the trial court to so order and therefore no error in failing to do so. For those paragraphs of the Motion which were denied by Mid–Continent's response to Bolen's Request for Admissions, those were not established facts. These were issues created and narrowed by the discovery process remaining for further discovery or resolution at trial. There was no error in not ordering these to be established facts.

Affirmed.

CHIPMAN and MILLER, JJ., concur.